**CONSOLIDATED ALUMINUM CORPORATION, Plaintiff,**

v.

**FOSECO INTERNATIONAL LIMITED, Foseco Incorporated, Alumax Incorporated, and Trialco Incorporated, Defendants.**

**FOSECO INCORPORATED, Counterclaimant,**

v.

**CONSOLIDATED ALUMINUM CORPORATION, Swiss Aluminum, Ltd. Counterdefendants.**

**No. 82 C 2792.**

United States District Court, N.D. Illinois, E.D.

June 15, 1989.

Order July 6, 1989.

Thomas I. Ross, Lewis T. Steadman and Robert M. Barrett, Hill, Van Santen, Steadman & Simpson, Chicago, Ill., for plaintiff.

Jay T. Taylor, Stephen J. Manich, Victor G. Copeland and Joseph A. Grear, Haight & Hofeldt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This patent infringement case was transferred to our docket on January 4, 1989 from the Honorable Ann C. Williams for the purpose of reviewing the parties' objections to Magistrate Elaine E. Bucklo's Report and Recommendations ("RR"), pursuant to Fed.R.Civ.P. 53(e)(2), issued on October 31, 1988 following a six week non-jury trial. Magistrate Bucklo found several of the claims in three of Consolidated Aluminum Corporation's ("Consolidated") six patents valid and willfully infringed by defendants Foseco Incorporated ("Foseco") and Foseco International Limited ("FIL") and issued a permanent injunction against further infringement. Magistrate Bucklo also found that one of Consolidated's patents which was willfully infringed by Foseco and FIL was also infringed by defendants Trialco Incorporated ("Trialco") and Alumax Incorporated ("Alumax").

Magistrate Bucklo held that Consolidated's three other patents and several of the claims in the three patents mentioned above were invalid and/or unenforceable. In addition, Magistrate Bucklo rejected Foseco's antitrust counterclaims. Finally, Magistrate Bucklo denied Consolidated's request to change the inventorship of two patents and declared that Consolidated's motion to change the inventors of a patent not claimed to be infringed by Consolidated in this case (but related to the patents in this suit), granted by the patent office in an *ex parte* proceeding, should have been denied with respect to two of the three alleged new inventors.

Following Magistrate Bucklo's ruling, the parties' submitted objections to her findings and conclusions and presented oral arguments on February 27, 1989. After carefully reviewing Magistrate Bucklo's RR and the parties' briefs and oral arguments, we conclude that four of Consolidated's six patents are invalid or unenforceable due to Consolidated's inequitable conduct, including the intentional concealment of the best mode and the intentional failure to adequately disclose prior art. Magistrate Bucklo found the remaining two patents invalid for obviousness and we affirm that ruling.

Accordingly, we reverse Magistrate Bucklo's conclusions of law with respect to claims in the three patents which she found valid and infringed but do not address those objections raised by the parties which are not relevant to our resolution of this case. In addition, we reverse Magistrate Bucklo's finding that Consolidated is entitled to an injunction. Finally, we affirm Magistrate Bucklo's denial of Foseco's antitrust claims under 15 U.S.C. § 2.[1]

## BACKGROUND

### 1. Parties, Patents and Infringement Claims

The facts of this case are well detailed in Magistrate Bucklo's RR and her findings

---

**1.** Following the presentation of oral argument on February 27, 1989, we ruled in court that Magistrate Bucklo's finding of willful infringement is clearly erroneous. *See* Transcript at 37–38, 87–90. However, because we have concluded that all of Consolidated's patents are invalid and/or unenforceable, it is not necessary for us to address further whether or not any infringment occurred or, if so, was willful.

of fact are adopted unless specifically rejected.[2] Consolidated owns patents relating to the manufacture and use of ceramic foam filters for molten metal, particularly aluminum. Consolidated has manufactured and sold a filter since 1977 under the tradename SELEE. Consolidated is a subsidiary of third party counter-defendant Swiss Aluminum Limited ("Alusuisse"), a Switzerland corporation. Consolidated owns patents by assignments from Alusuisse dated April 15, 1982 and January 27, 1984. Alusuisse presently owns foreign patents related to Consolidated's U.S. patents.

Foseco manufactures and sells ceramic foam filters for molten metal under the tradename SIVEX. Foseco began selling its product in September, 1980. FIL is the research arm of Foseco Minsep PLC, an English company which owns both Foseco and FIL. The SIVEX product was developed by FIL and Foseco sells the SIVEX filter under a license from FIL. FIL owns the trademark SIVEX. Alumax was once a customer of Consolidated's SELEE filter but since 1981 has purchased Foseco's SIVEX filter. Trialco bought filters from both Foseco and Consolidated between 1982 and 1983.

The following patents owned by Consolidated are the subject of Consolidated's allegations of infringement in this suit:

| Patent No. | Brief Description | Date Issued |
|---|---|---|
| 3,893,917 | Molten Metal Filter | 7/8/75 |
| 3,962,081 | Ceramic Foam Filter | 6/8/76 |
| 4,024,056 | Filtering of Molten Metal | 5/17/77 |
| 4,024,212 | Ceramic Foam & Method of Preparation | 5/17/77 |
| 4,075,303 | Method of Preparation of Ceramic Foam | 2/21/78 |
| 4,081,371 | Filtering of Molten Metal | 3/28/78 |

The parties refer to these patents by the last three digits of their patent numbers, e.g., the molten metal filter patent number 3,893,917 is known as the "917 patent." Another patent, number 3,947,363 (the "363 patent"), issued on March 30, 1976, covers the formula for the combined ingredients (slurry) that Consolidated uses to manufacture its ceramic foam filter. Because Foseco did not use the formula, Consolidated has not sued for infringement of this patent. RR, Findings of Fact at 28, n. 4. However, the 363 patent is relevant to the parties' objections to Magistrate Bucklo's RR.

Consolidated has charged Foseco with direct and contributory infringement of the 917, 081, 056, 212, 303 and 371 patents, Alumax and Trialco are also charged with direct infringement of the 917, 081, 056 and 371 patents, and FIL is charged with contributory and/or inducing infringement of the 917, 081, 212 and 303 patents. Finally, Foseco and FIL are charged with willful infringement. RR, Findings of Fact at 5–6.

The defendants denied infringement and contended that Consolidated's patents were not valid or enforceable. Foseco counterclaimed that Consolidated and Alusuisse conspired and acted in bad faith by bringing this lawsuit and notifying Foseco's customers that they might be liable for infringement. Foseco also alleged that Consolidated's patents were fraudulently procured, that by selling filter bowls only to customers of its SELEE filter Consolidated was liable for illegal tying, and that Consolidated and Alusuisse tried through economic power to force Foseco to withdraw from the ceramic foam filter industry. *Id.* at 6.

### 2. Prior Art and Development of Consolidated's Patents

In 1963, Dr. Karl Schwartzwalder obtained a patent, number 3,090,094, covering the use of a ceramic foam filter and referred to as the Schwartzwalder or 094 patent. The idea was first conceived in 1959 by Drs. Schwartzwalder and Art Somers. The Schwartzwalder patent expired in 1980. Consolidated's 917 patent, its initial and basic ceramic foam filter patent, lists Drs. Michael J. Pryor and Thomas J. Gray as the inventors. Sometime in 1963 or 1964, Dr. Schwartzwalder explained his in-

2. In addition to our findings and conclusions with respect to substantive objections, we make the following corrections to Magistrate Bucklo's RR which we believe were caused by typographical errors:

Finding of Fact 4, line 6: 1985 should be 1975.
Finding of Fact 15, line 1: '063 should be '094,
Finding of Fact 33, line 1: 1984 should be 1973.

vention to Dr. W.G. Lawrence who then discussed what he had learned from Dr. Schwartzwalder with Dr. Gray. Dr. Lawrence knew at the time that the Schwartzwalder product was patented. Dr. Pryor first became aware of the invention in discussions he had with Dr. Gray in 1972. RR, Findings of Fact at 11, 17, 18 & 25.[3]

The ceramic filter is produced by a heating and cooling process using certain elements which when combined are referred to as a "thixotropic slurry." The 094 Schwartzwalder patent "recommends ... that thixotropic additives such as Bentonite and Kaolin be added to the slurry." RR, Findings of Fact at 10. As described by Magistrate Bucklo, Dr. Schwartzwalder's patent

> discloses a calcium aluminate, phosphoric acid binder system that produces an exothermic reaction which is increased as the concentration of acid is increased causing it to set up faster.... This patent shows the desirability of controlling the temperature of the mixture by cooling when using a calcium aluminate phosphoric acid binding system.

*Id.* at 15. *See also id.* at 48. The specific "thixotropic slurry" used by several persons involved in academic research and in the ceramics industry during the early 1970s is the subject of Consolidated's 363 patent and is called the "CS1–B" slurry. *Id.* at 24–32. More importantly, the CS1–B slurry was admittedly the "best mode" known for making and using ceramic filters for molten metal and particularly aluminum at the time Consolidated applied for the 917 patent. *Id.* at 32.

When Foseco sought patent protection in the U.S. and Great Britain for a ceramic foam filter in 1970, a search of prior art revealed the Schwartzwalder 094 patent, another U.S. patent and a British Patent. *Id.* at 39. Thereafter, Foseco decided to limit its work to narrow improvement patents. Foseco obtained at least six U.S. patents related to ceramic foam filters for molten metal. *Id.* at 39–40. Foseco's patents are not in issue here.

Consolidated's 917 patent states that its "principal object ... [is] to provide an improved molten metal filter and a method for preparing same and also a method for filtering molten metal therethrough." Consolidated's five other patents allegedly infringed are improvements of the 917 patent and refer to it as a related patent. Consolidated contends that its patents are improvements over prior art with respect to the pore blockages produced in the filter and the filter's permeability. Magistrate Bucklo found that three of Consolidated's patents and several claims of its three other patents allegedly infringed were invalid, however, because they were obvious from or anticipated by the prior art, including the Schwartzwalder patent. *See* 35 U.S.C. § 103; RR, Findings of Fact at 47–57, 63–66, 68–70, 72–92.

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 53(e)(2), we must accept the magistrate's findings of fact unless clearly erroneous. Conclusions of law are reviewed *de novo*. *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987).

## BEST MODE

A patent application "shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C.A. § 112 (West 1984 & Supp.1988).

3. The named inventors for Consolidated's patents are:

917: Michael Pryor and Thomas Gray.
363: Michael Pryor and Thomas Gray.
081: John Yarwood, James Dore and Robert Preuss.
056: John Yarwood, James Dore and Robert Preuss.
212: John Yarwood, James Dore and Robert Preuss.
303: John Yarwood, James Dore and Robert Preuss.
371: John Yarwood, James Dore and Robert Preuss.

As discussed *infra*, Magistrate Bucklo denied Consolidated's motions to add Drs. Pryor and Gray as named inventors of the 081 patent and Messrs. Yarwood and Preuss as named inventors of the 917 patent and concluded that Yarwood and Preuss were "improperly added" by the patent office in an *ex parte* proceeding as named inventors of the 363 patent. RR, Conclusions of Law at 58.

The determination of whether or not a patent application adequately specified the best mode is a question of fact. *Dana Corp. v. IPC Ltd. Partnership,* 860 F.2d 415, 418 (Fed.Cir.1988); *Spectra–Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1535–36 (Fed.Cir.), *cert. denied,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). On review, a court must consider whether the patent applicant concealed evidence, accidentally or intentionally, and "[t]he specificity of disclosure required ... must be determined by the knowledge of facts within the possession of the inventor at the time of filing the application." *Spectra–Physics,* 827 F.2d at 1535 (citations omitted).

One seeking patent protection must disclose the best mode contemplated so that "the public, in exchange for the rights given the inventor under the patent laws, obtains from the inventor a full disclosure of the preferred embodiment of the invention." *Dana Corp.,* 860 F.2d at 418 (citation omitted). *See also Application of Gay,* 309 F.2d 769, 772, 50 C.C.P.A. 725 (1962) and *Application of Nelson,* 280 F.2d 172, 181, 184–85, 47 C.C.P.A. 1031 (1960). If the best mode contemplated by the inventor was not submitted in the patent application, the patent is invalid. *Dana Corp.,* 860 F.2d at 420.

As noted by the Seventh Circuit in *Flick–Reedy Corp. v. Hydro–Line Manufacturing Co.,* 351 F.2d 546 (7th Cir.1965), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966), the best mode requirement ensures that the inventor does not either abuse the patent protection bestowed or confuse the interested public:

> The Constitutional provision and implementing patent law are intended to reward with a seventeen-year monopoly an inventor who 'refrains from keeping his invention a trade secret.' ... The *quid pro quo* for the monopoly is disclosure which will enable those skilled in the art to practice the invention at the termination of the monopoly, and to 'warn the industry concerned of the precise scope of the monopoly asserted.' ... To accept the monopoly and withhold the full disclosure of the 'best mode contemplated by the inventor,' which will result in a contribution to the common good upon expiration of the monopoly is the 'selfish desire' against which 35 U.S.C. § 112 is directed.

351 F.2d at 550–51 (citations omitted).

### The 917 Patent

■ Magistrate Bucklo found that Claims 1–2 and 4–9 of the 917 patent are anticipated by and/or obvious from the prior art, including the Schwartzwalder patent, and are thus invalid. RR, Findings of Fact at 47–57. *See Tyler Refrigeration v. Kysor Industrial Corp.,* 777 F.2d 687, 689 (Fed.Cir.1985). She also held that all of the 917 patent's claims are invalid "for failure to disclose the best mode contemplated by the inventors." RR, Findings of Fact at 58. With respect to the best mode requirement, Magistrate Bucklo made the following findings:

> The evidence shows that the best mode known at the time of the filing of the '917 patent was the "CS1–B" slurry containing aluminum oxide, chromium oxide, kaolin, bentonite, aluminum orthophosphate, and water which is later disclosed and claimed in the '363 patent.... *Instead of disclosing the actual slurry used to make the filters tested and reported in the patent, a fictitious inoperable slurry ... was disclosed as Example 1 that omitted key ingredients such as the thixotropic clays kaolin, bentonite, and the aluminum orthophosphate binder necessary to hold the ceramic together....* Dr. Pryor admitted that the '363 patent represents the undisclosed 'best mode' of the '917 patent.... The evidence shows that both Dr. Pryor and Dr. Gray knew that Example 1 of the '917 patent was *inoperative* and not the best mode, and that the "CS1–B" slurry as disclosed in the '363 patent was the best mode used to make the filters that were actually tested as reported in the '917 patent.... The testimony of Dr. Pryor also shows that he knew that the "CS1–B" slurry was not going to be disclosed in the application because he instructed the patent attor-

ney, Mr. Bachman, to add the sentence at Col. 3, ln. 39–40, "Additives may be employed in the slurry such as binders." ... Inclusion of this sentence would have been unnecessary if the "CS1–B" slurry which contained a binder was going to be disclosed.... Thus, the evidence supports the inference that *the withholding of the best mode and inclusion of an unworkable ficticious slurry was intentional.* Had the examiner known that the best mode had been withheld, the '917 patent application would not have been allowed to issue under 35 U.S.C. § 112. Thus, *the intentional withholding of the best mode represents inequitable conduct in connection with the prosecution of the '917 patent.*

*Id.* (citations omitted) (emphasis added).

Magistrate Bucklo reiterated that Consolidated's failure to disclose the best mode was intentional:

In the case of the '917 patent, the inventors possessed a specific slurry, with known ingredients at known proportions. The '917 examples specify a ceramic slurry, but leave actual constituents unnamed and state false proportions for the named constituents. *The slurry specified was never used and is inoperable.* The ceramic foam reported in the specification examples was made with the undisclosed slurry. Under these circumstances, *the quality of the '917 patent disclosure is so poor as to effectively result in concealment. This concealment was not accidental, but was intentional.* The '917 patent is invalid for failure to disclose the best mode contemplated by the inventors.

RR, Conclusions of Law at 26 (emphasis added).

Consolidated contends that Magistrate Bucklo's finding that the 917 patent application failed to disclose the best mode "is arguably error." Plaintiff's Response To Defendant's Objections And Opposition To Master Report at n. 2 (citing *Randomex, Inc. v. Scopus Corp.*, 849 F.2d 585 (Fed. Cir.1988)). We disagree and do not believe that *Randomex* supports Consolidated's argument.

In *Randomex*, the patent in issue covered "a portable apparatus for cleaning [computer] disk packs" and included a cleaning fluid. 849 F.2d at 586. The patent stated that:

[t]he cleaning solution employed should be of a type adequate to clean grease and oil from the disc surfaces, such as a 91 percent alcohol solution or a non-residue detergent solution such as Randomex Cleaner No. 50281.

*Id.* Both the 91 percent alcohol solution and non-residue detergent solutions were used in prior art. The inventor knew that the 91 percent solution was the worst mode used and that the non-residue detergent solution was the best mode.

The court found that the best mode was sufficiently disclosed. The fact that a prior art solution which was not the best mode was also disclosed did not negate the fact that the best mode was disclosed. In addition, the trade name Randomex Cleaner No. 50281 was sufficient since "commercial substitutes [for non-residue detergent solutions] were readily available in the prior art and the trade name is mere surplusage—an addition to the generic description." *Id.* at 589–90. Moreover, the cleaning fluid component of the claimed invention was not an improvement over the prior art. *Id.* at 590. The invention was for a portable apparatus, not a cleaning fluid. Finally, the court found that the plaintiff's "failure to disclose its cleaning fluid formula was, as the inventor and president of Randomex admitted, merely a public relations attempt to generate sales for its cleaning fluid...." *Id.*

In contrast, not only did Consolidated's 917 patent specification omit crucial ingredients, it also disclosed a ficticious and inoperable slurry. The operable slurry did not have well known commercial substitutes, although the binder materials in general which were slurry constituents may have been known. Consolidated's specification states that "[a]dditives *may* be employed in the slurry such as binders." 917 Patent, Col. 3, lines 32–40. The purported inventors, however, knew at the time of their application that binders were essen-

tial as well as which specific binders produced the best mode.

The examples listed in the 917 patent specify a ceramic slurry, "but leave actual constituents unnamed and state false proportions for the named constituents. The slurry specified was never used and is inoperable." RR, Conclusions of Law at 26. *See Dana Corp.*, 860 F.2d at 419–20 (patent was invalid where specification that the surface of a valve stem seal for automobile engines "may be coated with a lubricating material" did not disclose the best lubricating material contemplated and known by the inventor). Moreover, sufficient evidence supports Magistrate Bucklo's conclusion that Consolidated knew at the time of its application what the best mode for its filter was, although a finding of intentional concealment is not necessary to violate 35 U.S.C. § 112. *Spectra–Physics*, 827 F.2d at 1535.

Indeed, the same CS1–B slurry known at the time of the 917 patent application was shortly later claimed by Consolidated in the 363 patent, which Consolidated does not claim the defendants have infringed. Consolidated necessarily claimed during its 363 patent application that the CS1–B slurry was patentable while it claims here that omission of some of the slurry's constituents is immaterial. Such statements are contradictory. Consolidated's own actions demonstrate that the specific elements of the CS1–B slurry are material and, therefore, that the omission of the specific binders or other constituents and the proportions for all elements is material.

▋ Finally, Magistrate Bucklo found that the 917 patent disclosed "a fictitious inoperable slurry." RR, Findings of Fact at 58. Although not addressed by Magistrate Bucklo or the parties in their memoranda, a patent which is inoperable or useless is invalid, even though the product actually produced is useful. *Butterfield v. Oculus Contact Lens Co.*, 332 F.Supp. 750, 758 (N.D.Ill.1971), *aff'd*, 177 U.S.P.Q. 33 (7th Cir.1973). The 917 patent, is therefore also invalid for disclosing an inoperable slurry, *see* 35 U.S.C. § 101, and RR, Finding of Fact at 45 to the extent that it states

that the 917 patent satisfies the requirements of utility under § 101 is erroneous.

Accordingly, we affirm the magistrate's conclusion that Consolidated's 917 patent is invalid for failure to disclose the best mode as required under 35 U.S.C. § 112. We also hold that the 917 patent is invalid because it does not disclose a useful product as required under 35 U.S.C. § 101. We also agree, for the reasons set forth in the RR, with Magistrate Bucklo's alternative bases for concluding that the 917 patent is invalid (anticipation and/or obviousness).

## INEQUITABLE CONDUCT

Presenting a patent application before the United States Patent and Trademark Office requires that one exercise the "highest duty of candor." *Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F.Supp. 1278, 1336 (D.Del.1987), *aff'd*, 865 F.2d 1247 (Fed.Cir.1989). As the Supreme Court stated in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), "[t]hose who have applications pending ... have an uncompromising duty to report to [the Patent and Trademark Office] all facts concerning possible fraud or inequitableness underlying the applications in issue." 324 U.S. at 818 (citation omitted). If one "fail[s] to disclose material information, or submi[ts] ... false material information, with an intent to mislead, ... [and there is] a threshold degree of materiality of the nondisclosed or false information," then such conduct is deemed inequitable and all claims of the patent are unenforceable. *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559 (Fed.Cir. 1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985).

▋ Inequitable conduct consists of "acts of commission ... as well as omission," and is established if "there is a substantial likelihood that a reasonable examiner would have considered the omitted reference or false information important in deciding whether to allow the application to issue as a patent." *Id.* at 1559 (citation omitted) (this is a more liberal standard than the "but for" test). *See also A.B.*

*Dick Co. v. Burroughs Corp.*, 617 F.Supp. 1382, 1394–95 (N.D.Ill.1985) and 37 C.F.R. § 1.56(d) (1987). Inequitable conduct encompasses acts which may not otherwise constitute fraud. *J.P. Stevens*, 747 F.2d at 1559.

### Was Consolidated's Failure To Disclose The Best Mode Inequitable Conduct?

■ Magistrate Bucklo concluded that the failure to disclose the best mode for the 917 patent constituted "inequitable conduct." RR, Findings of Fact at 58. Magistrate Bucklo did not discuss whether or not such inequitable conduct affected the enforceability of Consolidated's other patents. However, with respect to the defendants' antitrust claims, she concluded that the "fraudulent procurement of one patent ... does not affect the enforceability of other commonly owned and/or related subject matter patents." RR, Conclusions of Law at 42.

The defendants argued in their pre-trial brief that the 917 patent was unenforceable due to inequitable conduct and that such conduct affected the enforceability of other related patents. Defendants' Pre–Trial Brief at 9–10. According to the defendants, evidence that the inventor and his attorney *intentionally* concealed the best mode was revealed for the first time at trial. Thus, it is understandable that the defendants apparently did not discuss the inequitable conduct issue extensively in their pre-trial filings. However, Magistrate Bucklo could have addressed the issue after the presentation of all the evidence.

In any event, the issue of inequitable conduct was sufficiently preserved by the defendants during the trial and has been adequately briefed by both parties in their objections. Moreover, Consolidated does not suggest that the issue is waived. Instead, Consolidated contends that the failure to disclose best mode is not inequitable conduct as a matter of law and that any inequitable conduct with respect to one patent does not affect the enforceability of the others. The defendants argue that the failure to disclose the best mode was ineq-

uitable conduct and that Consolidated's inequitable conduct, including the failure to disclose the best mode, is material and so closely related to at least four of Consolidated's patents (917, 081, 212 and 303) that these four patents are unenforceable.

Since the failure to disclose the best mode renders a patent invalid, it is typically not necessary for a court also to decide whether the failure to disclose the best mode constitutes inequitable conduct with respect to the same patent. An invalid patent is, obviously, unenforceable. Thus, it is not surprising that few cases discuss whether a failure to disclose best mode also constituted inequitable conduct.

Consolidated makes the bold assertion that "[n]ever before has an omission of the best mode been held to constitute 'inequitable conduct' before the Patent Office!" Plaintiff's Response To Defendants' Objections And Opposition To Master's Report at 4. On the contrary, it has been held that the failure to disclose the best mode does constitute inequitable conduct. *Steierman v. Connelly and Hares*, 192 U.S.P.Q. 433 (Pat. Off. Bd. Int.1975), *modified on other grounds*, 192 U.S.P.Q. 446 (Pat. Off. Bd. Int.1976); *Flick–Reedy Corp. v. Hydro–Line Mfg. Co.*, 241 F.Supp. 127 (N.D.Ill. 1964). We have found no cases, however, which hold that the failure to disclose the best mode cannot constitute inequitable conduct as a matter of law.

In *Flick–Reedy*, the district court held that one of the plaintiff's patents which covered a seal for hydraulic and pneumatic cylinders (the 284 patent) was invalid *and* unenforceable because (1) the claims did not specify how "a person with ordinary skill in the power cylinder art" could achieve the seal as described, (2) the plaintiff engaged in "inequitable conduct in attempting to maintain its particular methods and nature of its 'special tool' ... while at the same time avoiding complete disclosure ... and while obtaining a patent monopoly thereon," (3) by concealing the nature of the special tool the plaintiff failed to disclose the best mode for its invention as required by 35 U.S.C. § 112 and (4) the plaintiff engaged in further "inequitable

conduct in misrepresenting the status of prior art, known to the plaintiff, to the Patent Office." 241 F.Supp. at 140–41. Thus, the district court concluded that the failure to disclose the best mode (the special tool), in addition to the misrepresentation of prior art, constituted inequitable conduct.

On appeal, the district court's conclusion that the cylinder seal patent (284) was invalid based on the failure to disclose the best mode was affirmed. *Flick–Reedy Corp. v. Hydro–Line Mfg. Co.*, 351 F.2d at 550–51 (the district court's conclusions with respect to the plaintiff's other (777) patent were affirmed in part and reversed in part and the court's conclusion of infringement with respect to a copyright was reversed). Because the Court of Appeals affirmed on this issue, it declined to address the other issues of validity or enforceability with respect to the 284 patent. *Id.* at 551. However, the Seventh Circuit did not reject the district court's conclusion that the failure to disclose the best mode was inequitable conduct.

The patent in issue in *Steierman* covered a type of glass for television picture tubes which allegedly absorbed X-radiation and resisted X-ray browning. The examples listed in the patent application, however, did not mention that the glass was made with cerium oxide. Instead, the patent specification only listed strontium oxide as accomplishing both objectives while cerium oxide was necessary to resist browning. 192 U.S.P.Q. at 435, 437. When the patent application was filed, the inventor knew that cerium oxide was used to achieve the new type of glass and that the application misrepresented that strontium oxide would prevent discoloring. *Id.* at 437–38. "It is readily apparent that the examples in the patent do not correspond exactly to the experimental work said to have been performed." *Id.* at 435.

Based on the knowledge of the inventors at the time of the experiments and the failure to disclose the best mode in light of this knowledge, the Board of Patent Interferences concluded in *Steierman* that the inventors had engaged in inequitable conduct rendering the patent unenforceable. [W]e believe the Primary Examiner would have rejected the claims in the application on the ground the specification did not disclose the best mode known to Connelly et al. at the time they filed their application.... In our opinion, there is no doubt a lack of best mode rejection would have been made.

The 'inequitable conduct' issue presented in this interference would not have arisen if Connelly, Hares, counsel, and possibly others at Corning Glass Works had seen to it that the experimental work by Connelly had properly appeared in the Connelly et al. application. We cannot condone what occurred. We are hopeful, indeed, that we will not encounter in any further cases the type of 'loose practice' which occurred in this case, because such 'loose practice' only adds to the 'suspicion and hostility' with which many, including federal judges, unfortunately approach the patent system.

*Id.* at 437–38 (citation and footnotes omitted).

In reviewing cross motions for reconsideration, the Board of Patent Interferences clearly reiterated that "[c]oncealment of the best mode known to an applicant at the time he files his application is inequitable conduct." 192 U.S.P.Q. at 447. Although that conclusion need not have been made since the patent was invalid for failure to disclose the best mode, the Board's conclusion was sound and was clearly intended as a signal that similar conduct in the future would not be tolerated. In fact, § 2011 of the Manual of Patent Examining Procedure (May 1988) published by the U.S. Department of Commerce Patent and Trademark Office cites *Steierman* as an example of inequitable conduct.

Consolidated also cites *Trio Process Corp. v. Goldstein's Sons, Inc.*, 461 F.2d 66 (3rd Cir.), *cert. denied*, 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972), as support for its proposition that the failure to disclose the best mode cannot constitute inequitable conduct. The single patent in issue in *Trio Process* covered the removal of

"organic insulation from scrap wire." 461 F.2d at 68. The district court had ruled that the patent was invalid because it was obvious in relation to prior art. 35 U.S.C. § 103. The district court did not rule on whether the patent was invalid for failure to disclose the best mode.

On appeal, the Third Circuit concluded that while the "individual steps" used by the inventor were obvious from the prior art, the (combined) invention was not obvious. 461 F.2d at 72–73. Contrary to Consolidated's statement in its memorandum, Plaintiff's Response To Defendants' Objections And Opposition To Master's Report at 5 n. 3, the Court of Appeals in *Trio Process* then held that the patent examiner's determination that the patent application adequately disclosed the best mode was not rebutted by clear and convincing evidence. *Id.* at 74. In other words, the best mode was disclosed and there was no inequitable conduct.

Thus, the Third Circuit's other conclusion, relied on by Consolidated, that any omissions and misrepresentations made with respect to the patent application "did not relate to the statutory conditions of patentability," *id.* at 73, is irrelevant here. Moreover, the court held that the alleged omissions and misrepresentations were immaterial. *Id.* Finally, the court did not specifically address the issue of inequitable conduct. Consolidated's statement to the contrary is erroneous.

As noted above, Magistrate Bucklo found that Consolidated intentionally withheld the best mode in its 917 patent application and that such concealment was inequitable conduct:

> Had the examiner known that the best mode had been withheld, the '917 patent application would not have been allowed to issue under 35 U.S.C. § 112. Thus, the intentional withholding of the best mode represents inequitable conduct in connection with the prosecution of the '917 patent.

RR, Findings of Fact at 58. We agree.

Because disclosure of the best mode is statutorily required, *see* 35 U.S.C. § 112, failure to disclose the best mode is inher-

ently material and, we believe, reaches the minimum level of materiality necessary for a finding of inequitable conduct. *See J.P. Stevens,* 747 F.2d at 1559. On the other hand, since the failure to disclose the best mode is not excused even if unintentional, *Spectra–Physics,* 827 F.2d at 1535, but inequitable conduct requires a "threshold" level of intent, *J.P. Stevens,* 747 F.2d at 1560, the failure to disclose the best mode will not constitute inequitable conduct in every case. Whether or not the failure to disclose the best mode constitutes inequitable conduct in a particular case depends upon the patentee's intent: the question becomes whether the patentee, "as a reasonable person in his position, should have known of the materiality of the withheld [best mode] reference." *Id.* at 1560 (citation omitted).

■ Consolidated's concealment was obviously intentional. An inoperable slurry was listed on the patent application although a cited example had been produced with the operable concealed slurry. Moreover, false proportions were listed for slurry constituents and an intentionally vague statement was made on the application. RR, Findings of Fact at 58. Accordingly, Magistrate Bucklo's conclusion that Consolidated's concealment was intentional is not clearly erroneous and we agree that Consolidated's failure to disclose the best mode with respect to the 917 patent also constituted inequitable conduct.

*Was There Inequitable Conduct With Respect To Consolidated's Other Patents?*

■ Where the enforceability of two or more patents is in issue and a relationship exists between or among them, as is the case here, a court must determine whether or not the inequitable conduct with respect to one patent renders the other patents unenforceable. Inequitable conduct can relate to more than one patent and render several patents unenforceable depending on the scope and nature of the conduct. *Precision Instrument Mfg. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (suppression of another company's

fraud and settlement with that company in order to acquire three patents owned by that company constituted inequitable conduct and all patents were unenforceable); *Hemstreet v. Burroughs Corp.*, 666 F.Supp. 1096 (N.D.Ill.1987) (failure to cite prior art constituted inequitable conduct and rendered two related patents unenforceable); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933) (five related patents were all unenforceable due to suppression of evidence of prior art with respect one patent application). *Compare with U.S. Surgical Corp. v. Hospital Products Intern.*, 701 F.Supp. 314 (D.Conn.1988) (patent holder did not engage in inequitable conduct where it failed to disclose prior art known to patent examiner and not relevant to patent application); *Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F.Supp. 1278 (D.Del.1987) (information withheld from patent examiner was not material and in any event unintentionally withheld).

In *Precision Instrument*, the Supreme Court denied enforcement of Automotive Maintenance's three patents based on inequitable conduct. Automotive Maintenance had known and failed to disclose to the Patent Office (and other appropriate authorities) that Precision Instrument, whose patents it had acquired, had sought patent protection for the same product based on perjured testimony and a false application. Moreover,

> [i]nstead of doing all within its power to reveal and expose the fraud, [Automotive Maintenance] procured an outside settlement of the interference proceedings, acquired [Precision Instrument's assigned patent] application itself, turned it into a patent and barred the other parties from ever questioning its validity. Such conduct does not conform to minimum ethical standards and does not justify Automotive's present attempt to assert and enforce these perjury-tainted patents and contracts.

324 U.S. at 816, 65 S.Ct. at 998. Automotive Maintenance's three patents covered

torque wrenches and the Supreme Court made it clear that the inequitable conduct sufficiently affected all three patents. *Id.* at 819, 65 S.Ct. at 999 (citing *Keystone Driller*).

In *Hemstreet*, a case not cited by either party in their objections to Magistrate Bucklo's R.R.,[4] Judge Hart held that both of Hemstreet's two patents were unenforceable due to inequitable conduct with respect to one patent application and the relationship between the two patents. Hemstreet had failed adequately to disclose prior art and failed to correct previous incorrect statements made to the Patent Office. After granting the defendant's motion for summary judgment, the plaintiff moved for reconsideration and Judge Hart made the following conclusion:

> [P]laintiff argues that the inequitable conduct ... related only to claims in the '100 patent and therefore would not render the '099 patent unenforceable. Although the rule in *J.P. Stevens* ... requires only that all claims in a single patent be rendered unenforceable, it does not prohibit claims in other patents from also being rendered unenforceable as well, under certain circumstances. Quite the opposite, in *Keystone Driller ...*, the Supreme Court held that inequitable conduct addressed to one patent was sufficiently related to four others to render all five unenforceable because the Court found 'the devices covered by the five patents to be important, if not essential, parts of the same machine.' ... Although the '100 and '099 patents are two separate patents, they result from the same original 1953 application. The '099 patent issued from a divisional application divided out of the 1953 application. Both deal with methods for identifying characters. Both utilize the 'or-not-and' circuit.... The two patents are therefore *sufficiently related* to one another and to the failure to disclose the High-Speed text [prior art] to require that both

---

4. *Hemstreet* was finally cited by the defendants in response to a list of additional cases involving best mode or inequitable conduct provided to the court by Consolidated following oral argument. Consolidated, however, did not list *Hemstreet* in its additional list of cases.

patents be rendered unenforceable on the basis of that inequitable conduct.

666 F.Supp. at 1125–26 (citations omitted) (emphasis added).

In contrast, the two patents in *Flick–Reedy Corp.* were not sufficiently related. The 284 patent covered a "seal for use in preventing leakage between the end of a cylinder tube and the head" while the 777 patent covered "lug mounts designed to hold a cylinder rigidly to a machine tool." 351 F.2d at 550–51. In addition, the "special tool" concealed in the cylinder patent was not used to manufacture the lug mount patent. In fact, the issue of whether or not inequitable conduct and/or failure to disclose the best mode with respect to the cylinder seal patent affected the lug mount patent application was not addressed by the court and probably not raised. *Steierman* involved only one patent.

Consolidated contends that a finding of inequitable conduct with respect to the 917 patent may not, as a matter of law, render its other patents unenforceable. Plaintiff's Response To Defendants' Objections And Opposition To Master's Report at 2 (citing *S.S.I.H. Equipment S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 378 (Fed.Cir.1983). Magistrate Bucklo cited *S.S.I.H. Equipment* as support for her conclusion in the context of the defendants' antitrust claims that where one patent is procured by fraud other "commonly owned and/or related subject matter patents" are not affected. RR, Conclusions of Law at 42.

In *S.S.I.H. Equipment,* the court reviewed an order by the International Trade Commission (the "Commission") barring the importation of a stadium scoreboard on the ground that it infringed on one patent (the 762 patent) owned by Stewart–Warner Corporation ("S–W"). The Commission had previously ruled that the importation was barred because it would infringe on three of S–W's patents (the 762, 926 and 335 patents) but that order was modified by the Commission after the two other patents were held invalid in a separate infringement action which did not involve the 762 patent. *Stewart–Warner Corp. v. City of Pontiac,* 213 U.S.P.Q. 453 (E.D.Mich.1981), *aff'd in part and rev'd in part,* 767 F.2d 1563 (Fed.Cir.1985).

On appeal from the Commission's modified order, the court concluded that any inequitable conduct with respect to the 926 and 335 patents was not related to the 762 patent. In fact, the 762 patent was obtained nearly three years before S–W applied for the others and engaged in inequitable conduct. Accordingly, the court held that the 762 patent was not sufficiently affected by S–W's inequitable conduct:

The inequitable conduct is not said to have occurred in connection with procurement of the '762 patent. Rather, SSIH relies solely on the supposition that all of the patents are so interrelated that S–W's 'unclean hands' with respect to the later patents renders the '762 patent unenforceable. We reject this contention as a matter of law.

The acts which are alleged to have taken place all occurred after the '762 patent issued and do not deal with invention claimed in the '762 patent. Moreover, the '762 patent issued almost three years before any of the other patents were applied for.

*S.S.I.H. Equipment,* 718 F.2d at 378–79.

As is clear from the court's analysis, the patent in issue was unrelated to the two subsequently obtained patents which were procurred through inequitable conduct and there was no evidence of inequitable conduct with respect to the initial patent. Although the court implied that relationships between patents cannot cause the inequitable conduct with respect to one patent to render another unenforceable *as a matter of law,* that implication is obviously dicta when read in the context of the issue before the court and the court's analysis. The court had only to decide whether or not the inequitable conduct with respect to the two subsequently obtained patents affected the earlier patent. A significant relationship did not exist between all three patents and the inequitable conduct was isolated.

The court in *Saxton Products Inc. v. United States Telephone Co.,* 182 U.S.P.Q.

608 (S.D.N.Y.1974), a case also cited by Magistrate Bucklo in the context of her antitrust analysis, broadly stated that "[f]raud in obtaining one patent will not invalidate or render unenforceable another patent in common ownership even where the two patents cover related subject matter, for example, one being generic and the other covering an improvement within the scope of the first." 182 U.S.P.Q. at 609 (citing *Noll v. O.M. Scott & Sons Co.*, 467 F.2d 295, 302, n. 6 (6th Cir.1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973)). If interpreted broadly to preclude any finding of invalidity of a related patent, the district court's conclusion is clearly contrary to the Supreme Court's holdings in *Keystone Driller* and *Precision Instrument*.

Moreover, the *Saxton Products* court's reliance on *Noll* is unfounded. The Sixth Circuit in *Noll* discussed the *doctrine of misuse* of a patent and noted in a footnote that while there was no proof that misrepresentations were made to the patent office "in connection with" a subsequently filed application, any misrepresentations "could only invalidate the patents in whose application the assertions were made." 467 F.2d at 302, n. 6. Thus, the *Noll* court was faced only with possible inequitable conduct with respect to a *subsequent* application, and, in any event, its discussion was in the context of the misuse doctrine, not the doctrine of inequitable conduct.

In *East Chicago Machine Tool Corp. v. Stone Container Corp.*, 181 U.S.P.Q. 744, *modified on other grounds*, 185 U.S.P.Q. 210 (N.D.Ill.1974), Judge Tone held that the plaintiff concealed evidence of prior art from the Patent Office and misled the examiner with respect to two of its three patents at issue. 181 U.S.P.Q. at 745–47. The fraud rendered these two patents invalid. In addition, Judge Tone concluded that because the plaintiff's "patents stem from an original application which contained fraudulent claims ultimately allowed, the doctrine of unclean hands bars

enforcement of any of the claims of any of the patents." *Id.* at 748 (citation omitted).[5]

Finally, during oral argument, Consolidated tendered to the court a copy of *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F.Supp. 1360 (D.Del.1988), for the proposition that inequitable conduct with respect to one patent does not affect the enforceability of another patent. On the contrary, the court there acknowledged that inequitable conduct with respect to one patent can affect the enforceability of other patents depending upon the relationship between the patents and the scope of the inequitable conduct.

Procter & Gamble (P & G) acquired the following three patents disclosing the manufacture of cookies which have crispy outsides and chewy insides: 969 patent on August 17, 1982; 333 patent on June 14, 1984; and 080 patent on March 5, 1985. P & G sued for infringement of the 333 patent. Ruling on P & G's motion to strike the defendants' affirmative defense of inequitable conduct, the court assumed that P & G made material misrepresentations to the Patent Office during its application for the 969 and 080 patents and addressed the defendants' claim that such conduct rendered the 333 patent unenforceable.

The court noted that "[i]f patent '333 is sufficiently related to the earlier patent '969, the authorities suggest that inequitable conduct with respect to patent '969 might render patent '333 unenforceable.... Patent '333, however, has virtually no connection with patent '969." 697 F.Supp. at 1362 (citing *Keystone Driller*, *Boots Laboratories, Inc. v. Burroughs Wellcome Co.*, 223 U.S.P.Q. 840, 848–49, 1984 WL 15504 (E.D.Va.1984) and 37 C.F.R. § 1.56(d) (1987)). Likewise, the court also concluded that "patent '333 has little or no connection with patent '080." *Id.* at 1364. Thus, consistent with the other cases, the court recognized that the issue is whether or not the patents have a significant relationship and how that rela-

---

**5.** The plaintiff in *East Chicago* had obtained a fourth patent which was withdrawn from its complaint but was the subject of the defendants' counterclaim. 181 U.S.P.Q. at 744. It is un-

clear from Judge Tone's opinion whether the fourth patent is unenforceable under the unclean hands (inequitable conduct) doctrine.

tionship is affected by the inequitable conduct. In *Procter & Gamble*, the relationship was insignificant.

 The court in *Procter & Gamble* noted its concern that inequitable conduct with respect to one patent could be "incorporate[d]" into another and stated, in dicta, that "[s]ubsequent inventors should be able to rely on those teachings without having to worry about incorporating the misdeeds underlying the incorporated patent's unenforceability." 697 F.Supp. at 1363 n. 7. We agree. Inequitable conduct requires a certain degree of intentional misconduct. *J.P. Stevens*, 747 F.2d at 1560. Thus, a subsequent and different inventor with no relationship to an invention which was previously patented through inequitable conduct should not be charged with inequitable conduct merely because he incorporates the teachings of a patent which itself was procured through inequitable conduct. The relationship between patents and the patent application process must be analyzed on a case-by-case basis. Moreover, patents enjoy a presumption of validity. 35 U.S.C. § 282 (West 1984 & Supp.1988). That presumption, however, may be overcome by inequitable conduct.

Magistrate Bucklo agreed with the defendants that there was other evidence of improper conduct by Consolidated, including statements in Consolidated's patent application which "were probably intended" to "mislead[ ] the examiner into neglecting to look at the Schwartzwalder '094 and other patents." RR, Findings of Fact at 58 n. 6. However, because she found that Consolidated engaged in inequitable conduct based on its failure to disclose the best mode, Magistrate Bucklo "conclude[d] that the issue of whether Consolidated's limited disclosure amounted to inequitable conduct need not be reached." *Id.*

We believe, however, that the additional evidence of improper conduct is relevant and material to determine whether or not inequitable conduct renders Consolidated's other patents unenforceable, a question not addressed in the RR, other than indirectly in Magistrate Bucklo's analysis of the defendants' antitrust claims. The failure ad-

equately to disclose prior art has been held in numerous decisions to constitute inequitable conduct, where the information withheld was material and intentionally concealed. *See, e.g., Hemstreet* and *Keystone Driller.*

Magistrate Bucklo held that Consolidated failed adequately to disclose prior art to the patent examiner when seeking the 917 patent. Although Consolidated cited the Schwartzwalder and two other patents by number it did not disclose those patents' teachings and "failed to explain the pertinency of these references." RR, Conclusions of Law at 3. In addition, the defendants contend that Consolidated misrepresented the teachings of the prior art, presumably in oral presentations before the patent examiner. In fact, the examiner did not cite the Schwartzwalder patent as a reference for any of Consolidated's seven patents (the six for which infringement is alleged plus the related 363 patent), with the exception of the 212 patent.

Magistrate Bucklo held that Consolidated's 917, 056 and 371 patents and several claims in Consolidated's 212, 081 and 303 patents were invalid because they were anticipated by or obvious from the prior art, including the Schwartzwalder 094 patent. *See DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 425 (Fed.Cir.1986). Thus, had the prior art been adequately disclosed, "there is a substantial likelihood that a reasonable examiner would have considered the omitted reference or false information important in deciding whether to allow the application to issue as a patent." *J.P. Stevens*, 747 F.2d at 1559 (citation omitted). In fact, based on Magistrate Bucklo's conclusions of invalidity for obviousness and/or anticipation, it is highly probable that Consolidated would not have been granted the 917, 056 and 371 patents that she found invalid and that the 212, 081 and 303 patents might not have been granted or their claims would have been more limited if the prior art had been adequately disclosed. Accordingly, the inadequate disclosure of prior art amounts to inequitable conduct.

 As noted above, presenting a patent application requires the "highest duty

of candor." *Phillips Petroleum,* 673 F.Supp. at 1336. Accordingly, when Consolidated presented its applications for improvement patents on its 917 patent Consolidated should have disclosed to the Patent Office that the best mode for the 917 patent was concealed in the 917 patent application. Such an admission would not have negated Consolidated's previous inequitable conduct but might have reduced the effect of such conduct on Consolidated's subsequent patent applications. It would have given the patent examiner a sufficient opportunity to compare Consolidated's patent applications with the prior art and would have evidenced an intent to deal with the Patent Office in good faith. It certainly is information which we believe the patent examiner would have deemed material. Thus, the failure to disclose prior inequitable conduct during later patent applications was itself inequitable conduct. A similar conclusion was reached by Judge Hart in *Hemstreet,* 666 F.Supp. at 1107–11, where he found that the failure in a later application to correct erroneous statements previously made to the patent office was inequitable conduct.

Finally, Consolidated attempted to change the inventorship of the 917, 363 and 081 patents in order to "remove the '917 and '363 patents as prior art references to the '081, '212, '303, '056 and '371 patents," Magistrate Bucklo found. RR, Conclusions of Law at 48. Applications for the 363 and 081 patent were filed on the same day, March 28, 1975, and both list the 917 patent as related. As noted above, however, of all (seven) of Consolidated's patents, the patent examiner cited the Schwartzwalder 094 patent as a reference only for the 212 patent.

Magistrate Bucklo concluded that Consolidated's motion before the patent office (in a 1984 *ex parte* proceeding) to change the inventors of the 363 patent, which was granted by the patent office, should have been denied with respect to two of the three "new" inventors since they were "improperly added." RR, Conclusions of Law at 58. *See also* RR, Findings of Fact at 61, 129–31; Conclusions of Law at 48–57. In one instance Magistrate Bucklo found that Mr. Preuss submitted a false affidavit to the Patent Office in which he alleged that he invented

> the '363 patent even though the slurry composition claimed in the '363 patent had been conceived and reduced to practice prior to Mr. Preuss's first involvement in the project in July, 1973 ... and Mr. Preuss added no new constituents to the slurry.... Similarly, Mr. Yarwood has not been shown to have made any inventive contribution to the '363 patent.

RR, Findings of Fact at 30. Consolidated moved at trial to change the inventorship of the 917 and 081 patents. Magistrate Bucklo denied this motion, finding that the alleged additional inventors either contributed nothing to the claimed inventions or did work after the patented inventions were discovered and/or the patent applications were made. RR, Findings of Fact at 129, 131; Conclusions of Law at 48–58.

We consider this further evidence of misconduct which, while perhaps not amounting to "inequitable conduct" since it occurred after the 917, 081 and 363 patents were granted, also taints all of Consolidated's related patents and evidences Consolidated's lack of candor and violates the duty articulated by the Supreme Court in *Precision Instruments,* 324 U.S. at 818, 65 S.Ct. at 999.

Moreover, there is a significant relationship between and among the 917, 081, 212 and 303 patents. "The '081 patent represents the results of tests on the ceramic foam filters developed by Consolidated." RR, Findings of Fact at 59 (citation omitted). The tests were conducted with the same concealed CS1–B slurry. In fact, the 081 patent specification notes that "[t]he filter material of the present invention may be prepared in accordance with the general procedure outlined in the aforesaid ... U.S. Pat. No. 3,893,917."

Consolidated argues that the defendants' patent expert at trial, former Commissioner of Patents C.M. Dann, testified that there was no inequitable conduct with respect to the 081 and 212 patents. The defendants note, however, that Commissioner Dann's testimony occurred prior to

the disclosure, at trial, that the purported inventor of the 917 patent and his attorney *intentionally* withheld the best mode. Such evidence, as discussed above, renders the concealment inequitable conduct. Moreover, Dann testified that *if* the 917 and 081 patents had the same general properties claimed, the withheld best mode would have been considered important by a reasonable patent examiner and should have been disclosed. Trial Transcript at 3812.

The inequitable conduct of failing to disclose the best mode in the 917 patent also significantly affected the 212 and 303 patents, continuations of the 081 patent and improvements on the 917 patent. The withheld best mode of the 917 patent, patented in the 363 patent, was included in the 212 and 303 patents. In fact, the withheld best mode of the 917 patent was incorporated in the 081 patent which was filed on the same day as the 363 patent application, clearly to avoid the 363 patent being cited as prior art with respect to the 081 patent. Moreover, as noted above, the fact that the slurry was previously withheld in the prior art was not disclosed to the patent examiner in any of these later applications.

Based on the above analysis, we conclude that Consolidated engaged in a broad pattern of inequitable conduct which was directly related to the 917, 081, 212 and 303 patents. The inequitable conduct here includes the failure to disclose the best mode and the failure adequately to disclose prior art in the 917 application, a failure which was continued in the other applications. Based on the significant relationship between the patents here and the scope and nature of Consolidated's inequitable conduct, we hold that the 917, 081, 212 and 303 patents are unenforceable.

This conclusion upholds the "public interest" recognized by the Supreme Court in *Precision Instruments:*

A patent by its very nature is affected with a public interest.... [It] is an exception to the general rule against monopolies and to the right of access to a free and open market. The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope.

324 U.S. at 816, 65 S.Ct. at 998. Accordingly, Magistrate Bucklo's rulings that the defendants are liable for infringement of the 081, 212 and 303 patents, RR, Conclusions at p. 93, are reversed as is her conclusion that Consolidated should be granted an injunction, RR, Conclusions of Law at 34.

## OBVIOUSNESS

### *Are Consolidated's 371 and 056 Patents Valid?*

As the above discussion demonstrates, Consolidated engaged in an extensive pattern of inequitable conduct affecting the enforceability of its 917, 081, 212 and 303 patents (in addition to the 363 patent which it does not claim the defendants infringed but as to which its inequitable conduct clearly also related). Magistrate Bucklo found the 056 and 371 patents invalid based on obviousness with respect to the prior art. RR, Findings of Fact 76–92; Conclusions of Law at 14–16.[6]

Magistrate Bucklo did not discuss whether or not the 056 and 371 patents, if valid, were unenforceable due to Consolidated's inequitable conduct. We assume that the defendants did not argue in their objections to the RR that the 056 and 371 patents were affected by the inequitable conduct because they believed that Magistrate Bucklo's conclusion that the 056 and 371 patents were invalid based on obviousness is sound and would be upheld. Although,

---

6. Magistrate Bucklo made one finding of invalidity for anticipation with respect to the 371 patent. RR, Findings of Fact at 91. She also found the 371 patent invalid for obviousness in the same Finding of Fact 91. In addition, all of her other findings of invalidity with respect to both the 056 and 371 patents turned on obviousness. Moreover, Consolidated's objections with respect to the 056 and 371 patents relate to obviousness, not anticipation. Therefore, our analysis of the objections with respect to the 056 and 371 patents will turn only on obviousness.

as discussed below, we agree with Magistrate Bucklo's conclusion that the 056 and 371 patents are invalid for obviousness, we believe that they also may be unenforceable due to Consolidated's inequitable conduct.

In response to Magistrate Bucklo's RR, Consolidated only objects to Magistrate Bucklo's conclusions that Claim 14 of the 056 patent and Claim 6 of the 371 patent are invalid. Consolidated does not challenge Magistrate Bucklo's conclusions of invalidity with respect to the other claims of patents 056 and 371.[7] According to Consolidated, these two claims in the 056 and 371 patents "recite a ceramic foam filter of specific structure (discussed in connection with '081 patent validity) in combination with filter box apparatus." Plaintiff's Objections And Request For Further Findings at 15 (Proposed Finding No. 4(b)). Consolidated contends that these claims represent

a molten metal filtering apparatus comprising, in combination, a uniquely constructed filter box apparatus (recited in the independent claims 13 of '056 and 4 of '371) and a ceramic foam filter structure including the air permeability feature found patentably distinguishing over the prior art in the Magistrate's validity analysis in connection with the '081 patent....

*Id.* at 20 (Proposed Finding No. 5(b)) (citing RR, Findings of Fact 62, 98).

Under 35 U.S.C. § 103, a patent is not valid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C.A. § 103 (West 1984 & Supp.1988). The defendants argue that the claimed inventions in patents 371 and 056, viewed as a whole,

are obvious based on the prior art. In addition, they contend that the filter box does not contribute to the filter itself and that neither claim 6 in the 371 patent or claim 14 in the 056 patent distinguishes the patents over the prior art and are thus obvious.

Magistrate Bucklo made the following findings of fact with respect to the 056 patent:

The '056 patent ... describes the entire method of filtering molten metal through a ceramic foam filter and includes an apparatus into which the filter is placed. Consolidated says that the claims made in this patent are not found in the prior art, but *I conclude that all of them would be obvious* to one of ordinary skill in the art.

RR, Findings of Fact at 77 (exhibit citation omitted) (emphasis added) (citing Trial Transcript at 3241–3243). Thus, it is clear that Magistrate Bucklo found the entire 056 patent invalid.

Consolidated's argument with respect to the 056 patent is based on the fact that in the RR, Findings of Fact at 80–87, Magistrate Bucklo specifically states that eighteen of the nineteen claims in the 056 patent are invalid but omits any specific reference to claim 14. However, based on Finding of Fact 77 that "all of [the claims] would be obvious," we believe that her omission of a specific reference to claim 14 in a subsequent Finding of Fact is insignificant and that she actually found claim 14, along with all the other claims in patent 056, invalid for obviousness. Accordingly, that finding is subject to the clearly erroneous standard of review.

Magistrate Bucklo made the following findings of fact with respect to the '371 patent:

The '371 patent ... is a division of the '056 patent. Consolidated claimed

---

7. Consolidated states that Magistrate Bucklo's "findings that the other claims of the '056 and '371 patents ... were invalid from the prior art *may be erroneous....* This Court should complete the decision in this case and designate at least claims 14 of '056 and 6 of '371 valid." Plaintiff's Objections And Request For Further Findings at 20–21 (Proposed Finding 5(b)) (em-

phasis added). Thus, although Consolidated may disagree with Magistrate Bucklo's conclusions with respect to the "other claims of the '056 and '371 patents," it is clear that it has not raised this disagreement to the level of an objection to the RR necessitating our review and any such argument is, therefore, waived.

the method described in the '371 patent was patentable over Eccles Patent No. 3,654,150 ... and other prior art because of the specification that the 'floor of the filter chamber beneath the filter plate is sloped downwardly towards said metal outlet.' ... However, defendants' expert, Mr. Hatch, testified that any engineer would construct the filter plate downward toward the metal outlet so that the metal would drain away from the filter....

The only established purpose of the sloped floor beneath the filter of Claims 1 and 4 is to facilitate drainage after completion of a pour, a purpose that would be obvious to one of ordinary skill in the art. ...

The other features disclosed by the '371 patent are anticipated by Eccles....

The exact angle of slope is not critical and selection would be a matter of choice and obvious to one skilled in the art.... Thus, all the elements of Claims 1 and 4 are disclosed in the art and it would be obvious to one of ordinary skill in the art to arrive at the claimed combination since the skill in the art and prior art as a whole suggests such a combination.

RR, Findings of Fact at 88, 89, 91, 92. Although Magistrate Bucklo did not specifically mention Claim 6 of the 371 patent, it is clear from her discussion that she found the patent as a whole to describe an apparatus to facilitate the drainage of molten metal through the filter and that such an apparatus was obvious. Thus, as with Consolidated's objections to Magistrate Bucklo's findings regarding the 056 patent, its objections regarding the 371 are also subject to the clearly erroneous standard.

Based on our review of the record and evidence presented, we believe that Magistrate Bucklo's findings of obviousness with respect to the 056 and 371 patents are not clearly erroneous but are clearly correct. It is reasonable to conclude that, based on the prior art known at the time Consolidat-

ed filed its patent applications, a filter apparatus should provide for a downward flow and that the most efficient angle for molten filtration can be either a matter of choice or determined by one with ordinary skill in the ceramic foam and molten metal industry perhaps through trial and error. *See also* RR, Findings of Fact at 84 n. 8, Conclusions of Law at 16.

Consolidated argues that by "including the limitation of the air permeability range for the ceramic foam filter structure in the filtering apparatus combination," Plaintiff's Objections And Request For Further Findings at 20, these claims are not obvious. We disagree. When viewed as a whole, it is reasonable to conclude that the filter box apparatus was obvious. As the court in *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed.Cir.1983), stated, the question under 35 U.S.C. § 103 is "whether the claimed invention *as a whole* would have been obvious." 713 F.2d at 1537 (emphasis in original).

Consolidated has failed to demonstrate that Magistrate Bucklo's conclusions that claim 14 of the 056 patent and claim 6 of the 371 patent are obvious are clearly erroneous. Accordingly, we affirm Magistrate Bucklo's findings of fact and conclusions of law with respect to the 056 and 371 patents and find these patents invalid. They are also, as previously indicated, tainted by Consolidated's broad pattern of inequitable conduct and, therefore, unenforceable.

### *Defendants' Antitrust Claims*

■ Defendant Foseco counterclaimed that Consolidated violated § 2 of the Sherman Act, 15 U.S.C. § 2, by obtaining the 917 patent through inequitable conduct and subsequently bringing an action for infringement of the 917 patent in an attempt to monopolize the market.[8] A patent which is procured through fraud violates § 2 if: (1) the patent "dominate[s] a real market," (2) [t]he invention sought to be patented ... [is] not patentable," and (3) [t]he patent

---

**8.** Foseco also counterclaimed for violations of § 1 of the Sherman Act and § 3 of the Clayton Act. *See* RR, Conclusions of Law at 37. The defendants' objections to the RR, however, only address its antitrust claims under § 2 of the Sherman Act. Accordingly, any objections with respect to its other antitrust claims are waived.

... [has] some colorable validity, conferred for example by the patentee's efforts to enforce it by bringing patent-infringement suits." *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 264–65 (7th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). Magistrate Bucklo rejected Foseco's contention on the grounds that "Foseco failed to prove that the '917 patent (as opposed to the '081 and related patents found to be valid) dominated the molten filter market." RR, Conclusions of Law at 42. She did not address the other two requirements under *Brunswick Corp.*

In its objections, Foseco initially claims that because the 081 patent (and other patents) are invalid due to inequitable conduct, Magistrate Bucklo's basis for denying the antitrust claims cannot stand. In addition, Foseco notes that, *assuming* the 081 patent is valid and enforceable, antitrust damages can be awarded based on the prosecution of a fraudulently obtained patent (the 917 patent) even though another validly obtained related patent (081) was simultaneously prosecuted. *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282 (9th Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985).

These arguments do not address the factor found by Magistrate Bucklo to be determinative. Magistrate Bucklo's conclusion was based on her finding that the 917 patent did not dominate the market. Her reference to the 081 patent does not affect her conclusion with respect to the 917 patent under 15 U.S.C. § 2. We assume that she was suggesting that because, as she found, the 081 and other patents were not affected by fraudulent conduct, the 081 and other patents, as opposed to the 917 patent, automatically did not subject Consolidated to a finding of antitrust violations, without market dominance. Moreover, Foseco did not contend in its objections to the RR that a § 2 violation is made out based on Consolidated's (bad faith) prosecution of the 081 patent. Foseco's objection is limited to the 917 patent.

Finally, Foseco challenges Magistrate Bucklo's finding that the 917 patent does not dominate the market. It argues that the claims in the 917 patent are broader than those in the 081 patent and, therefore, if the 081 patent dominates the market so too must the 917 patent. Foseco does not, however, provide any market figures addressing the dominance of the '081 patent on which it had the burden of proof. It contends only that Consolidated had a significant percentage of the ceramic foam filter market in question "during the years in issue" and "asserted the '917 patent in an attempt to keep customers from buying filters from anyone other than Consolidated." Defendants' Objections And Opposition To Master's Report at 69, n. 42 (citing Confidential Attachment To Plaintiff's Response To Foseco's Sixth Set Of Interrogatories, Interrogatory 26(d)—DX 1098).

It is clear, however, that Foseco was able to sell its filters in the market. In fact, two of the defendants here, Alumax and Trialco, were among its customers. In the absence of more evidence than Foseco presented, Magistrate Bucklo's finding that Consolidated did not dominate the market is not clearly erroneous.

## CONCLUSION

In conclusion, we:

1. Affirm Magistrate Bucklo's ruling that the 917, 371 and 056 patents are invalid;

2. Affirm Magistrate Bucklo's ruling denying Foseco's anti-trust claims;

3. Affirm Magistrate Bucklo's denial of the request to change the inventors of certain of the patents;

4. Reverse Magistrate Bucklo's ruling that certain of the claims of the 081, 212 and 303 patents are valid and were wilfully infringed by Foseco Incorporated and Foseco International Limited;

5. Reverse Magistrate Bucklo's ruling that defendants Alumax and Trialco infringed the 081 patent;

6. Reverse Magistrate Bucklo's grant of a permanent injunction to Consolidated enjoining all of the defendants from in-

fringing certain of the claims of patents 081, 212 and 303.

Judgement will be entered accordingly with each party to bear its own costs.

## ORDER

Plaintiff's Motion to Stay Determination on Foseco's Motion for Attorneys Fees is DENIED. The Court's Memorandum Opinion dated June 15, 1989 is amended to include the following Finding of Fact: "In the court's opinion, this is not an exceptional case warranting an award of attorneys fees under 35 U.S.C. § 285."