**CONSOLIDATED ALUMINUM CORPORATION, Plaintiff/Appellant,**

v.

**FOSECO INTERNATIONAL LIMITED, Foseco Incorporated, Alumax Incorporated and Trialco Incorporated, Defendants/Cross–Appellants.**

**Nos. 89–1637, 89–1643.**

United States Court of Appeals, Federal Circuit.

July 19, 1990.

Thomas I. Ross, Hill, Van Santen, Steadman & Simpson, of Chicago, Ill., argued, for plaintiff/appellant. With him on the brief were Lewis T. Steadman, Robert M. Barrett and David R. Metzger. Also on the brief was Robert H. Bachman, Bachman & LaPointe, of New Haven, Conn.

Jay G. Taylor, Ice, Miller, Donadio & Ryan, of Indianapolis, Ind., argued, for defendants/cross-appellants. On the brief for defendants/cross-appellants were Joseph A. Grear, Stephen J. Manich, Victor G. Copeland and Britton A. Davis, Haight & Hofeldt, of Chicago, Ill.

Before MARKEY, Circuit Judge,* BENNETT, Senior Circuit Judge, and SHARP, Chief Judge.**

---

* Circuit Judge Markey vacated the position of Chief Judge on 27 June 1990.

** The Honorable Allen Sharp, Chief Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

MARKEY, Circuit Judge.

Consolidated Aluminum Corporation (Consolidated) appeals from a judgment of the United States District Court for the Northern District of Illinois (Will, S.J.) holding its patents unenforceable and invalid. Foseco International Limited (FIL), Foseco Incorporated (Foseco), Alumax Incorporated (Alumax) and Trialco Incorporated (Trialco) cross-appeal the district court's denial of their motion for attorney fees. We affirm.

## BACKGROUND

We presume familiarity with the "Memorandum Opinion" of the district court, 716 F.Supp. 316, 11 USPQ2d 1817 (N.D.Ill. 1989), and the "Report and Recommendation" of the special master,[1] 10 USPQ2d 1143 (N.D.Ill.1988). Hence we set forth only those facts that underlie issues dispositive of this appeal.

On May 4, 1982 Consolidated sued four parties (Foseco, Alumax, Trialco, and FIL) charging violations of its rights under six United States patents (Nos. 3,893,917 ('917), 3,962,081 ('081), 4,024,056 ('056), 4,081,371 ('371), 4,024,212 ('212) and 4,075,-303 ('303)) relating to the manufacture and use of ceramic foam filters for molten metal, particularly aluminum. All of the charged violations relate to Foseco's SIVEX ceramic filter. Foseco is charged with joint, contributory, or induced infringement of the '917 patent in making and selling the SIVEX; Alumax and Trialco are charged with direct infringement of the '917 patent in using the SIVEX; FIL is charged with inducing infringement of the '917 by encouraging Foseco to commercialize and teaching Foseco how to make

the SIVEX; Foseco is charged with direct and contributory infringement of the '081 patent in making and selling the SIVEX; Alumax and Trialco are charged with direct infringement of the '081 patent in using the SIVEX; FIL is charged with contributory or induced infringement of the '081 in encouraging Foseco to commercialize and teaching Foseco how to make the SIVEX; Foseco is charged with contributory infringement of the '056 and '371 patents in using the SIVEX; Alumax and Trialco are charged with direct infringement of the '056 and '371 patents in using the SIVEX; FIL is charged with contributory or induced infringement of the '212 and '303 patents in encouraging Foseco to commercialize and helping and teaching Foseco to make the SIVEX.[2] Defendants filed counterclaims alleging antitrust violations.

On October 31, 1988, after a six-week trial involving more than 2000 exhibits and testimony from 27 witnesses in court and 70 witnesses by deposition, the special master issued a 94 page "report and recommendation" holding: (1) claims 1–2 and 4–9 of the '917 patent, claims 2, 7, 8, 10, and 14 of the '081 patent, the '056 patent, the '371 patent, claims 15, 20, and 24 of the '212 patent, and claims 3, 7, 15, and 20 of the '303 patent invalid in view of the prior art, 35 U.S.C. §§ 102, 103; (2) the '917 patent invalid for failure to disclose the best mode, 35 U.S.C. § 112; (3) the '917 patent unenforceable because Consolidated's intentional withholding of the best mode and disclosure of a fictitious, inoperative mode constituted inequitable conduct; (4) claims 1, 4, 5, and 9 of the '081 patent, claims 1, 2, and 18 of the '212 patent, and claim 1 of the '303 patent not invalid and willfully infringed by Foseco and FIL; (5) claims 1, 4, 5, and 9 of the '081 patent infringed by Trialco and Alumax; (6) that

---

1. Upon agreement of the parties, the district court designated Elaine E. Bucklo a special master, *see* 28 U.S.C. § 636(b)(2), Fed.R.Civ.P. 53, to conduct the trial on liability issues. Ms. Bucklo is a United States Magistrate and signed as such her Report and Recommendation. The parties have referred to Ms. Bucklo as "the special master" and as "the magistrate". We employ the former, in accord with the district court's designation.

2. The charges of contributory, induced and taught infringement presuppose direct infringement. Targeting at all points the SIVEX ceramic filter product, Consolidated sought an injunction that would under any of the patents cause cessation of its manufacture.

Consolidated had not committed antitrust violations; (7) that further infringement should be permanently enjoined; (8) that Consolidated's request to change inventorship of the '917 and '081 patents be denied, *see* 35 U.S.C. § 256; and (9) that "Yarwood and Preuss were improperly added as named inventors of the '363 patent." [3]

The parties submitted objections to the special master's report and recommendation pursuant to Rule 53(e)(2), Fed.R.Civ.P. On June 15, 1989, the district court issued a 46 page "Memorandum Opinion" affirming the determinations that (1) the '917, '371, and '056 patents were invalid; (2) the '917 patent was invalid for failure to disclose the best mode; and (3) the '917 patent was unenforceable because of Consolidated's inequitable conduct in concealing the best and disclosing a fictitious mode in the '917 patent. The court also: (4) held the '917 patent unenforceable because Consolidated's intentional failure to disclose prior art constituted inequitable conduct; (5) held the '081, '212, and '303 patents unenforceable because of Consolidated's "broad pattern of inequitable conduct"; (6) rejected the determinations that the '081, '212, and '303 patents were not invalid and were infringed; (7) affirmed the dismissal of the antitrust counterclaims; and (8) vacated the injunction against further infringement. The district court adopted all findings of the special master not specifically rejected.

Judgment was entered on June 21, 1989. On July 6, 1989, the district court denied Foseco's motion for attorney fees.

### ISSUES

1. Whether the district court abused its discretion in holding the '917, '081, '212, and '303 patents unenforceable.

2. Whether the district court erred in holding the inventions claimed in the '056 and '371 unpatentable under 35 U.S.C. § 103.

3. Whether the district court's failure to list reasons for its refusal to find this an exceptional case requires a remand.[4]

### OPINION

#### *Inequitable Conduct Renders the '917 Patent Unenforceable*

The special master found that Consolidated committed inequitable conduct by intentionally withholding the best mode contemplated by the inventors for practicing the invention of the '917 patent and by disclosing a fictitious, inoperable mode:

> The evidence shows that the best mode known at the time of the filing of the '917 patent was the "CS1–B" slurry containing aluminum oxide, chromium oxide, kaolin, bentonite, aluminum orthophosphate, and water which is later disclosed and claimed in the '363 patent. Instead of disclosing the actual slurry used to make the filters tested and reported in the patent, a fictitious inoperable slurry was disclosed as Example 1 that omitted key ingredients such as the thixotropic clays kaolin, bentonite, and the aluminum orthophosphate binder necessary to hold the ceramic together. Dr. Pryor [one of the inventors] admitted that the '363 patent represents the undisclosed "best mode" of the '917 patent. The evidence shows that both Dr. Pryor and Dr. Gray [the other inventor] knew that Example 1 of the '917 patent was inoperative and not the best mode, and that the "CS1–B" slurry as disclosed in the '363 patent was the best mode used to make the filters that were actually tested as reported in the '917 patent. The testimony of Dr. Pryor also shows that he knew that the "CS1–B" slurry was not going to be disclosed in the application because he instructed the patent attorney, Mr. Bachman, to add the sentence at Col. 3, ln. 39–40, "Additives may be employed in the slurry such as binders." Inclusion of this sentence would have been unnecessary if the

---

3. United States Patent No. 3,947,363 ('363) was not in suit.

4. In light of our disposition of the appeal, we need not address Consolidated's other allegations of error respecting validity, infringement, willfulness, and inequitable conduct.

"CS1–B" slurry which contained a binder was going to be disclosed. Thus, the evidence supports the inference that the withholding of the best mode and inclusion of an unworkable fictitious slurry was intentional. Had the examiner known that the best mode had been withheld, the '917 patent application would not have been allowed to issue under the 35 U.S.C. § 112. Thus, the intentional withholding of the best mode represents inequitable conduct in connection with the prosecution of the '917.

10 USPQ2d at 1153.

The special master's conclusions reiterated the intentional withholding of the best mode and disclosure of an inoperable mode.

> In the case of the '917 patent, the inventors possessed a specific slurry, with known ingredients at known proportions. The '917 examples specify a ceramic slurry, but leave actual constituents unnamed and state false proportions for the named constituents. The slurry specified was never used and is inoperable. The ceramic foam reported in the specification examples was made with the undisclosed slurry. Under these circumstances, the quality of the '917 patent disclosure is so poor as to effectively result in concealment. This concealment was not accidental, but was intentional.

*Id.* at 1167.

The district court agreed with the master's finding that Consolidated not only failed to disclose the best mode in the '917 patent but disclosed a fictitious and inoperable mode, rejected Consolidated's argument that failure to disclose the best mode cannot constitute inequitable conduct,[5] and agreed with the master that Consolidated had engaged in inequitable conduct:

> Because disclosure of the best mode is statutorily required, *see* 35 U.S.C. § 112, failure to disclose the best mode is inherently material and, we believe, reaches the minimum level of materiality neces-

sary for a finding of inequitable conduct. *See J.P. Stevens [& Co., Inc. v. Lex Tex Ltd., Inc.],* 747 F.2d [1553,] 1559[, 223 USPQ 1089, 1092 (Fed.Cir.1984)]. On the other hand, since the failure to disclose the best mode is not excused even if unintentional, *Spectra–Physics [Inc. v. Coherent, Inc.],* 827 F.2d [1524,] 1535[, 3 USPQ2d 1737, 1745 (Fed.Cir.), *cert. denied,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987)], but inequitable conduct requires a "threshold" level of intent, *J.P. Stevens,* 747 F.2d at 1560[, 223 USPQ at 1092], the failure to disclose the best mode will not constitute inequitable conduct in every case.

\* \* \* \* \* \*

Consolidated's concealment was obviously intentional. An inoperable slurry was listed on the patent application although a cited example had been produced with the operable concealed slurry. Moreover, false proportions were listed for slurry constituents and an intentionally vague statement was made on the application.

716 F.Supp. at 326, 11 USPQ2d at 1824–25.

Consolidated argues that although the district court found that the "nondisclosure" of the CS1–B slurry was "intentional" it did not make an express finding of "intent to deceive" and it ignored evidence of subjective good faith.

In so arguing, Consolidated apparently misunderstands our statement in *Kingsdown Medical Consultants Ltd. v. Hollister Inc.,* 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (in banc), *cert. denied,* — U.S. ——, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989), that:

> a finding that particular conduct amounts to "gross negligence" does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indi-

---

**5.** Throughout Consolidated's briefs it repeatedly speaks only of its "failure to disclose", nowhere contesting or even acknowledging the master's and the district court's findings that it was guilty of the positive, intentional act of disclosing a

fictitious, inoperable slurry. Arguments based on a false assertion of the basis for the determination of inequitable conduct are wasteful and foredoomed.

cate sufficient culpability to require a finding of intent to deceive.

*Kingsdown* stands for the proposition that courts must view the involved conduct "in light of all the evidence" and must then determine whether that conduct in its totality manifests a sufficiently culpable state of mind to warrant a determination that it was inequitable. Here the district court properly made that determination in light of Consolidated's *intentional* concealment of the CS1–B slurry and disclosure of a fictitious, inoperable slurry. Consolidated does not tell us, nor can we discern, why a finding of *intentional concealment* under the mask of *fictitious* mode is not the equal of a finding of intent to deceive. The district court need not have expressed its determination in the particular phrase "intent to deceive". *See Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 1573, 7 USPQ2d 1606, 1611 (Fed.Cir. 1988) ("A district court need follow no prescribed grammatical formulation in expressing its findings and conclusions.").

Consolidated's sole basis for arguing "good faith" lies in its assertion that the CS1–B slurry was invented by Yarwood, Dore and Preuss and was not disclosed because Consolidated properly wished to limit the application for the '917 patent to the invention of the named inventors, Pryor and Gray. That argument must fail, for it ignores the intentional disclosure of a fictitious, inoperable slurry.

The district court did not abuse its discretion in holding the '917 patent unenforceable for inequitable conduct.

*Unclean Hands Renders the '081, '212 and '303 Patents Unenforceable*

██ The district court concluded that "Consolidated engaged in a broad pattern of inequitable conduct which was directly related to the 917, 081, 212 and 303 patents." As part of its analysis, the court applied the unclean hands doctrine of *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245–46, 54 S.Ct. 146, 147–48, 78 L.Ed. 293, 19 USPQ 228, 230 (1933) and *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery*

*Co.,* 324 U.S. 806, 815, 65 S.Ct. 993, 997–98, 89 L.Ed. 1381, 65 USPQ 133, 138 (1945) in holding that Consolidated's intentional concealment of the best mode and disclosure of a fictitious inoperable mode during prosecution of the application for the '917 patent so soiled Consolidated's hands as to render the '081, '212 and '303 patents equally unenforceable:

> there is a significant relationship between and among the 917, 081, 212 and 303 patents. "The '081 patent represents the results of tests on the ceramic filters developed by Consolidated." (Citations omitted). The tests were conducted with the same concealed CS1–B slurry. In fact, the 081 patent specification notes that "[t]he filter material of the present invention may be prepared in accordance with the general procedure outlined in the aforesaid ... U.S. Pat. No. 3,893,917."

\*　　\*　　\*　　\*　　\*　　\*

> The inequitable conduct of failing to disclose the best mode in the 917 patent also significantly affected the 212 and 303 patents, continuations of the 081 patent and improvements on the 917 patent. The withheld best mode of the 917 patent, patented in the 363 patent, was included in the 212 and 303 patents. In fact, the withheld best mode of the 917 patent was incorporated in the 081 patent which was filed on the same day as the 363 patent application, clearly to avoid the 363 patent application being cited as prior art with respect to the 081 patent. Moreover, as noted above, the fact that the slurry was previously withheld in the prior art was not disclosed to the patent examiner in any of these later applications.

716 F.Supp. at 331–32, 11 USPQ2d at 1829.

This appeal presents the first instance in which this court is required to consider the equitable maxim "he who comes into equity must come with clean hands" in determining whether inequitable conduct in procuring one patent-in-suit requires a holding that other patents-in-suit are unenforceable. We are not, however, without guidance. *Keystone Driller* and *Precision In-*

*strument* teach us that circumstances may require an affirmative answer to that inquiry. *See also Mathis v. Hydro–Air Indus. Inc.*, 1 USPQ2d 1513, 1529 (C.D.Cal. 1986), *aff'd*, 818 F.2d 874 (Fed.Cir.) (unpublished), *cert. denied*, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987).

In *Keystone Driller*, the Supreme Court affirmed the Sixth Circuit's ruling that all five patents-in-suit were unenforceable due to unclean hands. The Court stated that "courts of equity do not make quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has *immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.*" *Id.* 290 U.S. at 245, 54 S.Ct. at 147, 19 USPQ at 230 (emphasis added). The Court relied on two factors in applying the test for unclean hands. First, the plaintiff had paid a witness in an earlier suit concerning three of the patents to suppress evidence relating to a prior use of the invention claimed in one. The plaintiff obtained a decree of validity in that earlier case and had relied on that decree to apply for a temporary injunction in the case before the Court. Second, the devices covered by the five patents-in-suit were "important, if not essential, parts of the same machine." *Id.* at 246, 54 S.Ct. at 148, 19 USPQ at 230. In *Keystone Driller*, the Court considered the relation of the inequitable conduct to the equity requested by the plaintiff; namely, enforcement of each of the separate patents-in-suit. The plaintiff was able to rely on the decree inequitably obtained in the earlier suit in its attempt to enforce all of the patents in the case before the Court. Thus, the plaintiff's unclean hands had a direct effect on each of the causes of action for patent infringement for each of the separate patents asserted by the plaintiff. For that reason, all of the patents were unenforceable.

Likewise, in *Precision Instrument* the inequitable conduct had a direct relation to the requested relief. The Court held the three Automotive patents-in-suit unenforceable for unclean hands. The application that led to one of the patents was filed by an employee of defendant, Precision Instrument. However, the alleged inventor had obtained his information indirectly from Automotive's inventor named on the other two patents. During the prosecution of the application, the Patent and Trademark Office (PTO) declared an interference between one of the Automotive applications and the Precision Instrument employee's application. Precision Instrument's alleged inventor filed a false statement concerning the dates of invention. Automotive discovered the fraud, and the parties settled the interference without notifying the PTO of the inequitable conduct. In the settlement agreements, the defendants assigned all of their rights in the patents to Automotive and acknowledged the validity of the claims that would issue on the applications. The suit before the Court was brought to enforce the agreements and the patents. The Court stated that "[t]he history of the patents and contracts in issue is steeped in perjury and undisclosed knowledge of perjury." *Id.* 324 U.S. at 816, 65 S.Ct. at 998, 65 USPQ at 138. The Court followed *Keystone Driller* and determined that Automotive's inequitable conduct in not disclosing to the PTO the false affidavit impregnated the entire cause of action and justified dismissal under the unclean hands doctrine. *Id.* at 819, 65 S.Ct. at 999, 65 USPQ at 139–40. Inequitable conduct was present in the patents that were the subjects of the settlement contracts, and that conduct related to the entire cause of action to enforce those contracts.

Consolidated argues that application of inequitable conduct considerations to the '081, '212, and '303 patents was an abuse of discretion because mere relatedness of subject matter is not a proper basis for such application. In the present case, however, there is more than mere relatedness of subject matter; the prosecution histories of the patents-in-suit establish that Consolidated's inequitable conduct in prosecuting the '917 patent had "immediate and necessary relation", *Keystone Driller*, 290 U.S. at 245, 54 S.Ct. at 147, 19 USPQ at 230, to the equity Consolidated seeks,

namely enforcement of the '081, '212 and '303 patents.

The '917 patent is directed to an improved method of filtering molten metal. The filter is prepared by impregnating a flexible organic foam material with an aqueous ceramic slurry, compressing the foam material to expel most of the slurry and to uniformly distribute the remaining slurry through the foam material, and drying and heating the coated foam material to burn out the foam material and to sinter the ceramic slurry coating thereby providing a ceramic filter. Claim 1 is representative:

> a low cost method of filtering molten metal through a disposable filter which comprises: providing a mass of molten metal, providing a ceramic foam material having an open cell structure characterized by a plurality of interconnected voids surrounded by a web of said ceramic, said ceramic foam material having a density of less than 30% of the theoretical density for a ceramic material of the same size, said ceramic foam material being formed by impregnating an open cell flexible organic foam having a plurality of interconnected voids surrounded by a web of said foam with an aqueous ceramic slurry so that the web is coated therewith and the voids are filled therewith, expelling slurry therefrom while leaving the web coated therewith, drying said coated foam and heating the dried coated foam to form said ceramic foam, and pouring said molten metal through said ceramic foam material at rate of 5 to 500 cubic inches per square inch of filter area per minute, thereby removing entrained solids from said molten metal.

As above indicated, the '917 patent misstates the composition of the best mode CS1–B slurry, which includes alumina, chromia, kaolin, aluminum orthophosphate, water and bentonite. Although the '917 patent says "[a]dditives may be employed in the slurry such as binders", nowhere is bentonite, the binder used in the best mode CS1–B slurry, disclosed.

The '081 patent is directed to a molten metal filter having specified properties of air permeability, porosity, pore size, thickness and structural uniformity. Claim 1 is representative:

> A ceramic foam filter for use in filtering molten metal having an open cell structure characterized by a plurality of interconnected voids surrounded by a web of said ceramic, said filter having as air permeability in the range of 400 to 8000 $\times$ 10$^{-7}$ cm$^2$, a porosity of 0.80 to 0.95, a pore size of 5 to 45 pores per linear inch and a thickness of from ½ [to] 4 inches, said filter having substantial structural uniformity with a plurality of homogeneously distributed pore blockages throughout the foam.

The properties set forth in claim 1 of the '081 patent are the result of using the CS1–B slurry and claim 1 is supported by the disclosure of the CS1–B slurry in the '081 specification. The concealment of the CS1–B slurry from the '917 patent enabled Consolidated to present the CS1–B slurry as part of the invention disclosure in the '081 specification and as a basis for its successful arguments in prosecuting the applications that became the other patents-in-suit.[6]

In prosecuting the '081 patent application, when the examiner rejected the claims on the '917 patent, Consolidated responded with an argument it could not have made if it had not concealed the CS1–B slurry, i.e., that the '917 patent did not suggest or inherently disclose the invention. Consolidated went on to say:

> It is also urged that the obtainment of the key characteristics defined in the instant specification is dependent upon the manner of preparing the filter. This is discussed in some detail in the instant specification, see Pages 9 through 14 thereof [discussing the CS1–B slurry],

---

6. The '917 had a different inventive entity from that listed for the '081, '212, and '303 patents. Consolidated's effort to change inventorship was denied by the PTO, the special master, and the district court, the latter deeming that effort

a part of Consolidated's "pattern of inequitable conduct". In view of our disposition of the appeal, we need not discuss the effort to change inventorship.

which is clearly not inherently contemplated by the '917 patent.

At another point, Consolidated argued to the PTO:

> The data set forth in the Examples which form a part of the instant specification are believed to be particularly surprising. See, for example, Table I [results of using the CS1–B slurry] which shows a remarkable improvement obtained in accordance with the *present invention* of both unfiltered metal and metal filtered through a tabular alumina bed. The other Examples are to the same effect. It is vigorously urged that one skilled in the art would not anticipate such significantly improved results from the '917 patent. The key interrelationship of operating variables is believed to be suggested only in the instant specification and not in the art. (Emphasis added).

The '212 and '303 applications were continuations-in-part of the '081 patent application. All claims in both patents include the step of "preparing an aqueous slurry of a thixotropic ceramic composition having a viscosity within the range $1 \times 10^3$ to $80 \times 10^3$ cps [the CS1–B slurry]." Responding to a rejection during prosecution of the '212 patent application, Consolidated argued that a thixotropic ceramic foam of specific viscosity (the CS1–B slurry) "is critical to the successful practice of the *present* invention." (Emphasis added).[7]

Thus Consolidated's concealment of the CS1–B slurry from the '917 patent permeated the prosecution of the other patents-in-suit and renders them unenforceable.[8]

■ Consolidated argues that this court in *SSIH Equipment S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 378, 218 USPQ 678, 690 (Fed.Cir.1983) interpreted *Precision Instrument* and *Keystone*

*Driller* as requiring "fraud before the court". The argument takes a statement in *SSIH* out of context. As the district court pointed out, the alleged inequitable conduct in *SSIH* occurred in the prosecution of patents not in suit and was not related to the patent-in-suit which had issued three years before that conduct occurred. Consolidated's reading of *SSIH* as requiring fraud before the court would be at odds with *Precision Instrument* which held that withholding information from the PTO so soiled the patentee's hands as to render all patents-in-suit unenforceable. 324 U.S. at 818–19, 65 S.Ct. at 999, 65 USPQ at 139–40. Moreover, we reject Consolidated's invitation to limit a flexible doctrine of equity to conduct occurring before a court. *See Keystone Driller,* 290 U.S. at 245–46, 54 S.Ct. at 147–48, 19 USPQ at 230 (Unclean hands is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."). Indeed, what we have termed "inequitable conduct" is no more than the unclean hands doctrine applied to particular conduct before the PTO. *See J.P. Stevens Co.,* 747 F.2d at 1561, 223 USPQ at 1093. To hold that unclean hands applies only to conduct before a court would be contrary to our precedent applying the doctrine to conduct before the PTO.

### The Prior Art Renders the '056 and '371 Patents Invalid

■ The special master determined that the '056 and '371 patents were invalid because the claimed inventions would have been obvious in view of the prior art. 35 U.S.C. § 103. Agreeing with that determination, the district court rejected Consolidated's objection that the special master's report contained no separate discussion of claim 14 of the '056 patent and claim 6 of the '371 patent.

---

7. The '303 patent was allowed on the first Office Action, citing only the '212 patent.

8. The special master was of the view that the '081, '212 and '303 patents would have been valid even if the CS1–B slurry were in the prior art. However that may be, we need not pause to consider the accuracy of that view, for the

issue is enforceability, not validity. *See J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985) (one standard is whether examiner would consider nondisclosed information important).

On appeal, Consolidated argues that the district court erred by distilling the invention to a "gist" and disregarding limitations that distinguish it from the prior art, specifically that claim 14 of the '056 patent and claim 6 of the '371 include a combination of a filter box and a ceramic foam filter.

We ascertain no error in the district court's determination that all of the inventions claimed in the '056 and '371 patents, including claims 14 and 6 thereof respectively, would have been obvious. No useful purpose would be served in retracing the path clearly explicated in the district court's opinion, wherein it properly recognized that "the question under 35 U.S.C. § 103 is 'whether the claimed invention *as a whole* would have been obvious.'" 716 F.Supp. at 332–34, 11 USPQ2d at 1830–31 (*quoting Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1537, 218 USPQ 871, 877 (Fed.Cir.1983)).

### Exceptional Case/Attorney Fees

The exceptional case/attorney fees scenario in this case is many-sided. Neither party sought nor obtained a ruling on the matter from the special master. Consolidated, as part of its objections to the master's report, sought a finding of exceptional case and a fee award to it based on the master's finding that Foseco had willfully infringed and on the delaying tactics of Foseco, including its two new-issue forays rebuffed by a then presiding judge and by the master. The district court did not comment on Consolidated's request in its Memorandum Opinion. Foseco, though it had obtained the master's finding of Consolidated's inequitable conduct in respect of the '917 patent, did not request a finding of exceptional case and a fee award until after the district court's judgment had been entered and appealed from. Consolidated's response was to file a motion to stay action on Foseco's motion, arguing that the exceptional case issue was not ripe for determination because "the prevailing party in this case has now switched" and might switch again after the appeal. Thus Consolidated sought an exceptional case finding and fees when it was the prevailing party on some but not all issues and Foseco sought the same after it had become the prevailing party on some but not all issues.

In response to Foseco's post-judgment motion, the district court amended its opinion to include: "In the court's opinion, this is not an exceptional case warranting an award of attorney fees under 35 U.S.C. § 285." Pointing out that inequitable conduct can be a legally sufficient basis for finding a case exceptional, Foseco says a remand is necessary to enable the district court to supply "thorough findings and explanation of whether this is an exceptional case" and whether Foseco should therefore be awarded its attorney fees. We cannot in this case agree that a remand is necessary.

In *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1573, 7 USPQ2d 1606, 1611 (Fed.Cir.1988), the district court found willful infringement and denied attorney fees in a single sentence, nowhere referring to 35 U.S.C. § 285. We there indicated a willingness to attempt discernment of the basis for unexpressed findings, *id.*, but could not do so in that case and were forced to a "regretted remand" because the record was barren of any basis for the district court's action.

In *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986), the district court, though it found willful infringement, denied fees because the case was not "exceptional". Because the district court "offered no findings, other than the compelling fact of willful infringement, on which we may base our review of the court's conclusion that this is not an exceptional case," *id.*, we were forced to remand. We there pointed out that a finding of exceptional case does not always compel an award of attorney fees. *Id.*

Similarly, in *Badalamenti v. Dunhams, Inc.*, 896 F.2d 1359, 1364–65, 13 USPQ2d 1967, 1971–72 (Fed.Cir.1990), because the district court was silent on the exceptional case issue and fee denial, we were "unable to review the decision of the district court on this issue." Recognizing that a remand

was "unfortunate", we went on to eschew any suggestion that the case be found exceptional, noting that defendant's primary basis for requesting fees had disappeared and that, even if the case be found exceptional, a denial of fees remained discretionary with the district court.

■ In *Fromson, S.C. Johnson,* and *Badalamenti,* we were forced to "regretted" and "unfortunate" remands because we lacked a record on which we might undertake, as indicated in *Fromson,* a discernment of the basis for unexpressed findings. A remand, with its accompanying expenditure of additional judicial resources in a case thought to be completed, is a step not lightly taken and one that should be limited to cases in which further action must be taken by the district court or in which the appellate court has no way open to it to affirm or reverse the district court's action under review.[9] *See* 9 C. Wright, A. Miller & F. Elliott, *Federal Practice & Procedure* § 2577 (1971 & Supp.1990). Though findings on "exceptional case" and reasons underlying the discretionary action on fees are helpful to an appellate court, remand should not be a matter of rote in every case in which findings and reason are not expressly set forth. An appellate court need not close its eyes to the record where, as in this case, there is a way clearly open to affirm the district court's action.

The Supreme Court has told us that a party may defend a judgment "on any ground properly raised below", *Washington v. Yakima Indian Nation,* 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979), so long as such affirmance would neither expand nor contract the rights established for either party by the judgment appealed from. *United States v. New York Telephone Co.,* 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376 (1987). The present is such a case, for Consolidated raised in its motion to stay the ground that both parties had prevailed

on some and lost on other issues and our affirmance neither expands nor contracts either party's rights under the judgment appealed from.

■ We have repeatedly noted that when findings are required on the exceptional case issue such finding must initially be the province of the district court. In this particular case, however, such initial findings are not required where, as here, the record is replete with undisputed facts that unequivocally support the district court's action in denying Foseco's motion. *See* C. Wright, *supra.* Foseco, the seeker of an exceptional case finding and attorney fees, was adjudicated a willful infringer after trial before the special master, its repeated late efforts to add claims requiring delays for further discovery had been rebuffed by a presiding judge and the master, and the district court affirmed the master's dismissal of its antitrust counterclaim. Consolidated prevailed at trial before the master on validity of eight claims in three patents, on infringement, on willfulness, and on its injunction request, and prevailed before the master and the district court on its antitrust defense.[10] Neither party can nor does claim that it prevailed on all issues at all stages.

It would be but a wasteful and fruitless exercise to remand so the district court could point out to us the undisputed facts listed above and remind us that inequitable conduct alone need not compel a finding that the case is exceptional, citing perhaps *J.P. Stevens Co., Inc. v. Lex Tex Ltd.,* 822 F.2d 1047, 1052, 3 USPQ2d 1235, 1239 (Fed. Cir.1987) and *A.B. Dick Co. v. Burroughs Corp.,* 798 F.2d 1392, 1400 n. 11, 230 USPQ 849, 856 n. 11 (Fed.Cir.1986) (case exceptional, but fees denied where plaintiff prevailed on some issues).

■ If it were needed, a further reason exists for declining to exercise our power to remand in this case. The district court

9. Rule 52(b), Fed.R.Civ.P., provides for postjudgment motions for findings not made. Counsel should not simply ignore that rule and head off to the appellate court to seek a remand for the making of those same findings.

10. The district court ultimately found it unnecessary, in view of its validity and unenforceability determinations, to specifically address in its opinion the merits of the infringement, willfulness, or injunction issues.

did not here find the case "not exceptional". What the district court found is that this is "not an exceptional case *warranting an award of attorney fees.*" That statement reflects the court's exercise of its discretion in light of all the undisputed facts listed above. Moreover, it accords with our repeated statement that not every case deemed "exceptional" must result in a fee award. *See, e.g., S.C. Johnson & Son,* 781 F.2d at 201, 228 USPQ at 369; *Badalamenti,* 896 F.2d at 1365, 13 USPQ2d at 1972. No useful purpose would be served by a remand to enable the district court to tell us in express terms what we already know from the record. Nor is it necessary in this case to ask the district court to "explain" why in its discretion it denied attorney fees when, unlike the circumstances in *Fromson, S.C. Johnson,* and *Badalamenti,* the present record supplies no basis for questioning that exercise of discretion. On the entirety of this record, we cannot say that the district court's denial of Foseco's motion for attorney fees constituted an abuse of discretion.

### Attorney Fees on Appeal

Because the appeal is clearly not frivolous, Foseco's request for attorney fees on appeal is denied.

AFFIRMED.