**ALEXANDER MANUFACTURING CO., Plaintiff,**

v.

**HM ELECTRONICS, INC., Defendant.**

**No. C 91–3104.**

United States District Court,
N.D. Iowa,
Central Division.

Feb. 25, 1994.

Richard Gill, Hugh D. Jaeger, Minneapolis, MN, David A. Hacker, Cedar Rapids, IA, for plaintiff.

Larry L. Saret, Chicago, IL, Bernard Kleinke, San Diego, CA, James C. Nemmers, Cedar Rapids, IA, for defendant.

## ORDER

DONALD E. O'BRIEN, Senior District Judge.

This matter comes before the court on plaintiff's motion to dismiss with prejudice and on defendant's motion for summary judgment, motion to dismiss, and motion for attorney's fees. The court held a hearing on these matters and after careful consideration of the parties' oral and written arguments, the motions to dismiss are granted, summary judgment is granted in favor of defendant to the extent that the patent at issue in this case is declared invalid and unenforceable, and defendant's motion for attorney's fees is denied.

This is a patent infringement case wherein plaintiff asserted in Count I, infringement of patent no. 4,806,840 (the 840 patent) by defendant. The patent at issue was for a certain battery charger with certain charging characteristics. Count II asserted a "trade dress" infringement. Defendant states that during a deposition in 1993, plaintiff agreed to voluntarily dismiss Count II.

On July 8, 1993, plaintiff filed a motion to dismiss with prejudice both claims against defendant and for an order granting judgment in favor of the defendant on defendant's counterclaim that the patent is invalid and unenforceable. In other words, plaintiff concedes that the patent is invalid and unenforceable and plaintiff wishes to terminate this litigation. At the same time, plaintiff also moved to stay any further discovery pending the outcome of the motion for dismissal and asked that each party be required to bear its own costs and expenses.

Defendant agreed to the dismissal of the plaintiff's complaint and to an order stating that the patent is invalid and unenforceable. However, defendant resisted the stay of discovery and any order that would require each party to bear its own costs. At the hearing on these motions the parties agreed that discovery was completed as of January 31, 1994 and that plaintiff's motion to stay discovery was moot. Based on this background, the court is persuaded that the motions to dismiss with prejudice should be granted and that summary judgment should be entered in favor of defendant on its counterclaim urging that the patent is invalid and unenforceable. In addition, it is now evident that the motion to stay discovery should be denied as moot. Those rulings, however, do not end this controversy. The parties agreed that the issue remaining before the court is whether this is an "exceptional case" warranting an award of attorney's fees to the defendant.

Defendant is seeking attorney's fees under 35 U.S.C. § 285. As mentioned, defendant contends this is an "exceptional case" under

that code section. That section states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Defendant claims that this case is "exceptional" for several reasons, which include, that plaintiff committed fraud on the patent office by withholding the fact that there had been extensive sales; that plaintiff committed fraud on the patent office by giving an incomplete and inaccurate picture of its prior sales; that plaintiff continued to withhold knowledge of these sales and marketing activities from the patent office during the prosecution of the continuation application; that plaintiff filed the instant suit with knowledge that the patent was invalid and without adequately determining whether or not the defendant's product even infringed; that plaintiff repeatedly failed to disclose information in discovery in this case; that plaintiff threatened defendant's customers with patent infringement actions after this action was filed; and that plaintiff continues to represent its product as "patented" even after discovering that the patent is invalid.

The parties filed extensive briefs and exhibits in support of their arguments on the issue of whether or not this is an "exceptional case." The court has considered those extensive briefs and exhibits in full. At the hearing on this issue, defendant summarized its evidence in the form of a chart titled "Chronology of 'Exceptional' Case." Defendant states that exceptional circumstances include, as in this case, inequitable conduct during the prosecution of a patent, or filing and maintaining an infringement suit which the patent holder knows or should know is baseless. *Eltech Sys. Corp. v. PPG Indus. Inc.*, 903 F.2d 805 (Fed.Cir.1990). Defendant states that patent cases have been found to be exceptional when a patent applicant failed to disclose to the Patent and Trademark office the existence of a product brochure describing the invention and published more than one year prior to the filing date, *Fox Indus., Inc. v. Structural Preservation Sys.*, 922 F.2d 801, 803–04 (Fed.Cir. 1990). Defendant states it is also an "exceptional case" when the patent applicant failed to tell the Patent Office about the existence of its own sales of the later-patented invention and when the inventor denied his own prior public use before the Patent office and during an infringement suit. *Interpart Corp. v. Imos Italia*, 777 F.2d 678, 686 (Fed.Cir. 1985); *Hughes v. Novi American, Inc.*, 724 F.2d 122, 124 (Fed.Cir.1984).

On the chart used at the hearing, defendant pointed out several dates prior to the first patent application which they say indicate that this particular product was "on-sale" more than a year prior to the filing of the patent application. In particular, defendant points out that in August 1981, plaintiff attended a trade show in Atlanta where they used the SMART CHARGER trademark—the same trademark used to describe the patented device. Defendant also states that in September 1981 to December 1982 the plaintiff offered SMART CHARGERS and TRI-ANALYZERS for sale in eight monthly APCO bulletins. Further, from December 1981 to November 1982, defendant states that plaintiff sold at least 30 SMART CHARGERS, TRI-ANALYZERS and dispensed at least 200 pieces of sales literature to Electronic Products. The chart also shows that in May 1982 plaintiff advertised SMART CHARGERS and TRI-ANALYZERS in a catalog and that prior to December 1982, plaintiff advertised its invention in a brochure attached to the SMART CHARGER trademark application. Finally, prior to December 1982, Electronic Products resold to other people at least 16 SMART CHARGERS and TRI-ANALYZERS. Defendant asserts that in plaintiff's initial application to the patent office in December 1983, plaintiff purposefully failed to report any of these pre-patent sales or advertisements which would have resulted in the patent being denied. After the first patent application was abandoned, defendant asserts that plaintiff filed a continuation application in 1986 and again failed to disclose the earlier sales. Defendant contends this failure constituted a fraud on the patent office and warrants this case being considered "exceptional."

Defendant also claims this case is exceptional because plaintiff filed this suit with knowledge of the patent invalidity and since then has sought to prevent the discovery of these early sales and has denied knowledge of them. Defendant also claims that plaintiff

filed this suit without really knowing whether defendant's product infringed. Defendant further contends that plaintiff has continued to contact defendant's customers threatening them with infringement claims and that plaintiff continues to hold out its product as patented.

The bottom half of defendant's chart summarizes defendant's evidence regarding post-patent activities which they claim make this case exceptional. Again, the court has considered these arguments by defendant and the exhibits accompanying each entry on the chart.

In response to defendant's arguments, plaintiff concedes that inequitable conduct during the prosecution of a patent can render the patent invalid and unenforceable. However, plaintiff states that inequitable conduct alone need not compel a finding that the case is exceptional. *Consolidated Aluminum Corp. v. Foseco International, Ltd.,* 910 F.2d 804, 814 (Fed.Cir.1990). Plaintiff asserts that a finding of "intent to deceive" the Patent Office is necessary to sustain a charge of inequitable conduct. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988). Plaintiff asserts that it is not enough to show that material information was not disclosed or even that false material information was submitted. Rather, plaintiff contends defendant must show by clear and convincing evidence that the non-disclosures or the false submissions were made with specific intent to deceive. Negligence, plaintiff further contends, does not constitute an intent to deceive.

Plaintiff asserts that experimental use of a product embodying the patented invention is a recognized exception to the rule that you cannot sell the product for more than a year prior to the patent application. Plaintiff asserts that the issue before the court is not whether clear and convincing evidence exists to invalidate the patent due to the prior sales. That issue is moot by reason of plaintiff's motion to dismiss and consent to entry of judgment invalidating the patent. The real question here is whether plaintiff or its attorneys acted inequitably before the Patent Office in addressing the on-sale bar issue. Plaintiff concedes that some of the newly discovered information is material to the early sales issue and should have been disclosed to the Patent Office. However, plaintiff claims that materiality of the information does not imply an intent to deceive. Plaintiff states that the failure to disclose the information was a result of misunderstanding, oversight, or negligence.

Plaintiff points out that they are the ones who filed the new declaration clarifying the matter in October 1984 with the Patent Office. Therefore, they assert they couldn't have been trying to deceive the Patent Office. Plaintiff asserts that the original declaration they filed was made in good faith by the inventors. They assert that both inventors thought that the "invention" being patented was the battery charger that had not become fully developed and ready for production until January 1983. Plaintiff asserts that the extent of the revelations contained in the October 1984 declaration to the Patent Office are totally inconsistent with an intent to deceive. That declaration disclosed over 200 sales of prototypes for experimental purposes. Plaintiff asserts that the discrepancy between the volumes, amounts and circumstances of the experimental prototype program discussed in the October 1984 declaration and the sales records recently obtained by defendant are explainable and would not constitute any evil motive or intent. Plaintiff asserts these discrepancies are attributable to the lapse of time between the sale of the prototypes in 1981 and 82 and the preparation of the declaration in October 1984. Plaintiff states they may have been careless, negligent, or inattentive in attempting to review 2–3 year old sales records but that doesn't amount to intent to deceive.

Plaintiff asserts that this is not an "exceptional case" warranting attorney's fees. Plaintiff asserts that the purpose of 35 U.S.C. § 285 is to provide the district court with the discretion to award attorneys fees where it would be *grossly unjust* for the winner be left to bear the burden of his counsel fees. *Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 1364 (Fed.Cir.1989). Plaintiff contends that the cases cited by the defendant are distinguishable and this court should follow *Western Marine Electronics v.*

*Furuno Electric Co., Ltd.*, 764 F.2d 840, 842 (Fed.Cir.1985) where the court affirmed the district court's denial of attorney's fees in an action involving the on-sale bar issue even though the district court had determined that the patentee had not been forthright in producing certain documents and that some of its interrogatory answers may have been deliberately misleading. Plaintiff states the cases relied on by defendant, *Fox, Hughes,* and *Interpart* were all decisions where attorneys fees were awarded based on egregious, inexplicable acts of non-disclosure or false disclosure to the Patent Office and where it was evident that the patentees filed the lawsuits knowing their patents were invalid. Plaintiff states that in this case, they never doubted the validity of their patent until days before they moved to dismiss this case. Plaintiff asserts that a stream of evidence was suddenly discovered in 1993 which plaintiff felt significantly undermined the validity of their patent and plaintiff acted promptly on that information to end this litigation without further expense.

■ As mentioned, the court has fully considered all arguments of the parties, even those not discussed at length in this order. Based on the cases cited by the parties and the evidence reviewed, the court is not persuaded that attorney's fees would be appropriate in this case. While it is apparent that some information was not presented to the Patent Office with the initial application, much of that same information was supplied voluntarily by plaintiff several months later. In addition, the court is persuaded that plaintiff did discuss the early sales with the patent examiner during the prosecution of the continuation application, even though defendant contends no such discussion took place. Plaintiff also now admits that some of the advertising that took place in the early 1980's was never brought to the attention of the Patent Office and in fact seriously calls into question the validity of the patent. However, this court is not persuaded that plaintiff had any intent to deceive the Patent Office in that regard or that there was fraud involved.

Furthermore, the court is not persuaded that plaintiff filed this suit with knowledge that the patent was invalid or that plaintiff has acted inequitably in this lawsuit. The court is not persuaded that plaintiff's contacts with defendant's customers was done in any way to harass or intimidate those customers. Plaintiff explained that it had previously done business with McDonald's Corp. and the contacts were made in an attempt to get McDonald's Corp. to settle with plaintiff. Plaintiff explained that, at that point, they still considered their patent to be valid. Plaintiff further explained that they made no contacts after the date on which they filed the motion to dismiss in this case. The court is satisfied with this explanation and is not persuaded that there was any bad faith on the part of the plaintiff in making those contacts.

■ It is clear that it is within the court's discretion whether or not to award attorney's fees. *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed.Cir.1990). It is equally clear that the defendant bears the burden of proving by clear and convincing evidence that this is an exceptional case. *Id.* There must be some finding of unfairness, bad faith, or inequitable conduct on the part of the plaintiff. *Id.* The court is simply not persuaded that there was any unfairness, bad faith, or inequitable conduct on the part of the plaintiff which would warrant finding this to be an "exceptional case." Therefore, the motion for attorney's fees shall be denied.

**Upon the foregoing,**

**IT IS ORDERED** that the motions to dismiss with prejudice are granted. The case shall be dismissed with each party to bear its own costs.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment on the counterclaim is granted and the patent in this case is declared invalid and unenforceable.

**IT IS FURTHER ORDERED** that plaintiff's motion to stay discovery is denied as moot.

**IT IS FURTHER ORDERED** that defendant's motion for attorney's fees is denied.